(47 South. 882.)

No. 17,160.

DUNLAP v. BERTHELOT (LEON CAHN & CO., Interveners).

(Dec. 14, 1908.)

1. FORECLOSURE OF MORTGAGE.
   Foreclosure was instituted.

2. ADVANCES TO CULTIVATE CROP—PLEDGE.
   Interveners claimed preference over part of the proceeds for advances to cultivate and save the crop.

3. ADVANCES TO CULTIVATE CROP—MERCHANTABLE CROP.
   The factor's privilege rests on the products of the growing crop.

4. AGRICULTURE (§ 13*) — LIENS — EFFECT—CROP COVERED — SEED CANE — SEEDS IMMOBILIZED.
   Factors have no pledge or privilege on the seed cane necessary for the operation of the plantation for the coming year.
   [Ed. Note.—For other cases, see Agriculture, Cent. Dig. § 32; Dec. Dig. § 13.*]

5. ADVANCES TO CULTIVATE CROP—NECESSARY SEED.
   At the beginning of the year a quantity of acres of seed cane was planted; at the end of the year the quantity of seed cane was about the same as that which had been planted at the beginning. The evidence does not prove that the seed cane was not necessary, or that the least attempt was made to the disadvantage of interveners' claim.

6. ADVANCES TO CULTIVATE CROP—CONTRACT.
   The parties must be *held* to have contracted with reference to the necessity of saving a sufficient quantity of seed.

7. MATTERS NOT PART OF ISSUES.
   The agreement between plaintiff and one of the defendants cannot be given effect in these proceedings.

(Syllabus by the Court.)

Appeal from Twenty-First Judicial District Court, Parish of Iberville; Calvin Kendrick Schwing, Judge.

Mortgage foreclosure by James E. Dunlap against V. & J. A. Berthelot. After seizure by the sheriff, and pending the advertisements of the property for sale, Leon Cahn & Co. filed an intervention, claiming a privilege for advances and supplies. Judgment for Dunlap, and interveners appeal. Affirmed.

Edward Blount Talbot and Lazarus, Michel & Lazarus, for appellants. Clarence Samuel Hébert and Alexander Hébert, for appellee.

BREAUX, C. J. Plaintiff in foreclosure proceedings asked for the sale of the property on which he had a mortgage, consisting of three plantations in the parishes of Iberville and Ascension, one adjacent to the other, to wit, Chatham, Claiborne, and Old Hickory.

The mortgagors also owned the Cannonburg plantation, not mortgaged to plaintiff, though referred to in the argument by plaintiff's counsel.

The mortgage was executed in January, 1901, to secure the amount of $100,000 capital, plus interest.

The property was advertised for sale. Leon Cahn & Co. filed a petition and a supplemental petition of opposition, claiming preference and right over the seed cane and the first year's stubble.

These petitions were filed on the 15th day of February, 1908.

The amount of the claim of Leon Cahn & Co., interveners, was the sum of $14,330.-.36 due, as they alleged, by V. & J. A. Berthelot for advances for the current season 1907-08.

V. Berthelot died in June, 1907. His widow qualified as tutrix of their minor child, and as tutrix she is a party in these proceedings.

Leon Cahn & Co. advanced to the defendants an amount annually to enable them to cultivate and save their crop.

The advances for the current season 1907-08 were $50,000, secured by lien on defendants' crop in accordance with the provisions of Act No. 66, p. 114, of 1874. Their act of pledge contains the recitals usually inserted in all such acts.

The Berthelots paid a part of this amount, and left unpaid the amount above mentioned.

The contention of Leon Cahn & Co. is that the defendants windrowed cane for seed from the crop of 1907 worth fully $12,000, and that their claim, secured by pledge, is superior to plaintiff's mortgage and should be paid from the sale of the seed cane. They ask to have it separately appraised, and for a prorating of the proceeds according to the respective claims of the parties to this suit.

A day or two following the date that their petition of intervention was filed, the sheriff was ordered by the district judge to make separate appraisement of the cane windrowed, and this officer was ordered to retain the amount of the claim of the third opponents, Leon Cahn & Co.

According to the sheriff's return, there were about 2,600 tons of cane. It was appraised at $4 per ton, equal to $10,400.

In the supplemental petition, as before stated, opponent claimed privilege of the first year's stubble, consisting of 600 or 700 acres.

On the 7th day of March, 1908, the plantations mortgaged to plaintiff were sold to him at sheriff's sale in the proceedings of foreclosure for the sum of $70,000.

Plaintiff, some time thereafter, filed his answer to the claim of the third opponents and controverted their contention.

He urged in the first place that the privilege sought, as claimed by the third opponents, cannot be asserted in these proceedings; that the plantation passed cum onere if third opponents had any claim.

This was pleaded as an exception. It was followed by the plea of general denial, and by special pleas setting forth that the third opponents had no privilege; that the claim for advances had been discharged from the proceeds of the crop of 1907; that much of the proceeds were applied to the payment of indebtedness of previous years, for which interveners, Cahn & Co., had no privilege, as all the proceeds have been applied to the crop of 1907.

As to the seed cane, plaintiff's contention is that the plantations on which his mortgage rests have for many years been cultivated in sugar cane; that yearly the owners have retained seed cane to cultivate the places for the succeeding year; that about January, 1906, the Berthelots, defendants, windrowed seed cane for the year 1907; that it was planted and is included as a part of the realty on which he has a mortgage; that the crop of 1908 was indebted for the seed of 1907; and that equitably seed cane was due by the crops of each succeeding year for the seeds taken from the crop of the year preceding; that the seed cane is the life of the plantation, without which there would be scant profit.

Now as to Cannonburg, the place before mentioned: It was mortgaged to Leon Cahn & Co.

Plaintiff avers that part of the seed cane was to go toward planting the crop on this place.

We pass without comment the exceptions pleaded by plaintiff to opponents' claim, as in our view there is no necessity of passing upon them.

We take up the case on the merits.

The theory upon which the petition of opposition of Leon Cahn & Co. was based is that their privilege for advances followed the cane after it had been windrowed and after it had been converted into seed to plant the crop of 1908.

The defendants windrowed the usual quantity needed for seed cane each year. Their action in this respect was entirely normal.

We will express our own views upon the subject in regard to whether the privilege follows or not, and follow them by reference to our Code and by citing decisions.

We are decidedly of the opinion that the privilege for advances will not have the effect of a pledge on that part of the crop needed for seed. The holder of the privilege has no right to interfere with the seed put aside in good faith, and when there is not the least ground upon which to base the allegation of fraud. Civ. Code, art. 524.

The purpose of the statute cited was to enable the planter to obtain advances, and sustain his credit by pledging the future crop. The statute would not be much of an assistance in the way of enabling the planter to cultivate and save his crop if the one advancing had the right to apply the seed of the place to the payment of his advances.

Under the article before cited, the seed is immobilized by destination; it passes beyond the statutory pledge; it becomes part of the plantation, and from that moment is not subject to the privilege here claimed. The pledge can go no further than to the proceeds of the merchantable crop.

The question has been considered by this court in Citizens' Bank v. Wiltz (Bush and Levert, Interveners), 31 La. Ann. 244.

The plaintiff, as in the present case, held a mortgage on a plantation. Bush and Levert, commission merchants, had a claim secured by a pledge similar to the one claimed in this case. Bush and Levert intervened in the foreclosure proceedings and claimed superior right over the mortgage creditor.

The court said in that case:

"That the pledge on the growing crop, which was pro hac vice a movable, did not prevent the immobilization of the seed, cane and corn, because their fictitious character of immovability had come into existence before the consenting of the pledge of the growing crop."

As we have seen, the plantation had from year to year produced seed and crop therefrom; it had produced corn in like manner. The character of the immovability of the seed was not lost by the mere use of the seed to produce crop and hence to reproduce itself; nor was the immovability of the corn, necessary for the cultivation of the crop, destroyed by the use of the corn for its own reproduction.

The court refers to Duranton, vol. 5, p. 57, in support of its text.

There are other decisions of the French court, to which we refer in the absence of any other decisions by our own court, construing article 524 of our Civil Code, which is precisely the same as that of the corresponding number of the French Code. They sustain the proposition that seed, being immovable by destination, is immovable even before the seed is planted.

The foregoing proposition is from Dalloz, Codes Annotes, vol. 1, p. 857, citing a number of decisions, and referring to a number of law-writers regarding the article in question.

The further proposition sustained is that seed is not subject to seizure. Not being subject to seizure, it cannot be taken in any way to satisfy the pledge. Id.

The last proposition we translate is as follows: One seizing should in the interest of the farm leave the quantity of seed equivalent to that used in making the crop on which he has a privilege. Id.

We return for a moment to the decision of our court before cited, only to state that in its text it calls attention to article 654 of

the Code of Practice, forbidding the seizure of the plantation separately from the property enumerated in the article.

In our opinion, neither by seizure nor by third opposition, as in the present case, can the place be stripped of its seed.

Cahn & Co., the third opponents, state that they have made advances to these defendants for many years.

This is true; none the less, we do not think we can grant the correctness of the proposition that their funds, as they contend, produced the present quantity of cane on which they assert a privilege.

This is based upon the theory that their advances on the crop of 1907 enabled the defendants to produce the seed, and that it was their advances that enabled them to produce this year's crop.

We can only say that this proposition finds no support in the authorities to which we have before referred.

Advances to make crops of previous years had been paid, and thereby the defendants had acquired beyond all question the right to the seed, and the advantage, which the opponents seek to obtain from the crop of 1908, by claiming privilege on the proceeds, is offset by the seed produced in previous years, as before stated.

In argument, prescription was brought forward as a reason why plaintiff should not recover. It was said that some of the notes upon the face of the papers were prescribed.

That may be; it can afford no right to the intervening opponents. The pleadings do not show that they sought to avail themselves of that plea. They are entirely silent about prescription. It cannot be supplied by the court.

Although the proceedings, so far as the succession of the late V. Berthelot was concerned, were carried on contradictorily with the tutrix, representing the minor child, it of itself affords no good ground to set aside the sale. The tutrix did not object to the proceedings against her, and no one else.

The intervening opponents have no ground of complaint on this ground. They claim the proceeds, and in this respect they are bound by their plea. They cannot be heard to urge that the sale is null.

The third opponents in the next place contend that the sale was one in disguise, to the end of favoring the surviving joint owner; that plaintiff had promised to this surviving partner that, in the event of the adjudication to him (plaintiff), and the setting aside of all claims of the minor in the proceedings in consequence, he would then let this surviving partner have the title.

This ground cannot be considered in this suit, in which plaintiff foreclosed his mortgage, and in which the third opponents claimed the proceeds of some of the property.

The question relates to immovable property; it affects title. A special demand was necessary in order to set aside the proceedings.

This charge is of a serious nature. The act is one reprobated by law.

We will not dispose of the title or construe the act of parties as if no title passed to these plantations, in the absence of all special pleas and of testimony admitted in accordance therewith proving the verity of the charge. Title had passed. It would take written testimony to take it out of its present status, or testimony considered its equivalent.

We do not feel authorized to grant the relief asked.

For reasons stated, and the law and the evidence being for plaintiff and against the third opponents, Leon Cahn & Co., the judgment is affirmed.