148 So.2d 795 (1962)
Mrs. Florence JUNCKER, Widow of Dr. John C. DERBOFEN, and Mrs. Violet M. Derbofen, Wife of Gail T. Kreher
v.
T. L. JAMES & COMPANY, Inc.; Joe W. Brown; George Dallas Williams; and T. M. Dorsett.
No. 824.
Court of Appeal of Louisiana, Fourth Circuit.
December 3, 1962.
Rehearing Denied February 4, 1963.
*796 H. Gordon Hartman and Gail T. Kreher, New Orleans, for plaintiffs and appellants.
Barham & Wright, Ruston, and Charles J. Rivet, New Orleans, for T. L. James & Co., Inc., George Dallas Williams and Sabine Dredging & Construction Co., Inc., defendants and appellees.
Solomon S. Goldman, New Orleans, for T. M. Dorsett, Mrs. Dorothy D. Brown and Succession of Joe W. Brown, defendants and appellees.
Before REGAN, SAMUEL and TURNER, JJ.
HENRY F. TURNER, Judge pro tem.
In this case the plaintiffs, alleging themselves to be the owners of a tract of land described as:
A CERTAIN PORTION OF LAND, together with the buildings and improvements thereon, rights, ways and privileges thereunto belonging, or in any wise appertaining, situated in the Third District of this City, designated as Grove 57 in Section 25 of New Orleans Lake Shore Land Company Tracts, according to the official map of said tracts on file in the office of E. K. Leverich, Notary Public, under date of December 11, 1918.
seek damages from the defendants in the amount of $519,500. They allege that the defendants, T. L. James & Company, Inc., Joe W. Brown, George Dallas Williams, and T. M. Dorsett, engaged in a joint venture, unlawfully removed from their property 245,000 cubic yards of soil, sand, clay, mud, etc., valued at $2 per cubic yard or $490,000. They allege that the defendants destroyed vegetation and trees valued at $4,500 and that plaintiffs had been deprived of their full use and enjoyment of the premises to the date of filing of suit in the amount of $25,000. The record shows a series of transactions between the defendant, T. L. James & Company, Inc., and the defendant, Joe W. Brown, in which T. L. James & Company, Inc., contracted with Brown to build him a lake on property adjoining that owned by the plaintiffs. They allege that at this approximate time T. L. James & Company, Inc., was performing a contract with the Department of Highways of the State of Louisiana by building a highway in close proximity to the property of the plaintiffs and defendants Joe W. Brown and T. L. James & Company, Inc. A quantity of dirt to be used as fill in building this highway was required. In the process of removing the dirt from the property of Joe W. Brown to the fill, the Sabine Dredging & Construction Co., Inc., used a dredge to remove the dirt from the property; it was acting under a subcontract with the defendant, T. L. James & Company, Inc., and was subsequently, by supplemental and amended petition, made a codefendant. The plaintiffs' petition alleges that the Sabine Dredging & Construction Co., Inc., encroached upon their property and dredged a section through the center of their property, Grove 57, which, incidentally, contains 5 acres, and continued to excavate and remove dirt to the extent that 2.232 acres of the said 5-acre tract was covered with water. Defendants' answer merely places plaintiffs on proof and sets up contributory negligence as a bar to plaintiffs' cause of action, alleging such negligence on plaintiffs' part to be the failure to cause their boundaries to be established and marked. They further answered averring that if there was any dirt removed which belonged to plaintiffs, it was an inadvertent and unintentional act and further that the dirt, if taken, was used solely for the public and beneficial purpose of erecting said state highway.
After a trial of the case, the district court found that the plaintiffs failed to prove any conspiracy between the defendants and dismissed the suit against all of *797 them except T. L. James & Company, Inc. The judge assigned no written reasons for judgment other than those contained in the judgment which read as follows:
"* * * the sole question at issue is the quantum of damages to be awarded, and that where, as in this case, the cost of restoration exceeds the value of the property injured, the measure of damages is the difference in the market value of the property as a whole before and after the injury, and for the further reasons this day orally assigned:"
He then gave judgment for the plaintiffs against defendant, T. L. James & Company, Inc., in the full sum of $6,044, with interest and costs. The plaintiffs have appealed from this judgment.
The facts in this case show that the plaintiffs had owned this property for a number of years and that it was unimproved. The property had no trees or vegetation growing thereon, nor any improvements of any kind for that matter. By stipulation between counsel it was agreed that T. L. James & Company, Inc., in fact took 80,025 cubic yards of dirt from plaintiffs' property and that no amount of money had been paid nor tendered plaintiffs for this dirt. The facts further show that 4,000 cubic yards of this dirt, which is referred to as the humus, were delivered to Joe W. Brown as a part of the consideration for the transaction between him and defendant, T. L. James & Company, Inc., whereby T. L. James & Company, Inc., was to build him an ovalshaped lake containing a stated number of acres and that as a further consideration there was an exchange of lots at the rate of 3 lots for 2 lots in the area between these two defendants. The remainder of the dirt was used as fill for the highway. The evidence further shows that overtures had been made by one or more of these defendants, through their agents or realtors at their request, to try to purchase the property from the plaintiffs who declined to sell their 5 acres in Grove 57 at any price. There is some evidence to the effect that the defendants were willing to pay $25,000 and possibly more for the property, but their offers were rejected. Further evidence in the case shows that there was property in the immediate area that had been sold for as high as $4,500 per acre.
It is to be noted that in plaintiffs' petition they simply ask for monetary damages as itemized but reserved the right to claim future damages for the continuing trespass. The plaintiffs have not asked for damages to the property in this case. Their damages by reason of the unlawful taking and removing from their property are itemized as: first, the removal of the dirt; second, the destruction of vegetation and trees; third, deprivation of the full use and enjoyment of the premises to date. The evidence in the case does not support the judgment for any amount on account of the last two items. That brings us to a consideration of the value of the dirt removed by T. L. James & Company, Inc.
Although there is evidence in the case to justify plaintiffs' suspicion of the conspiracy between the defendants to obtain their property, the trial court found none, and we find no manifest error in his adjudication on that score and consequently will not disturb same.
We think under the pleadings in this case that the trial court, however, erred in using market value as the criterion for assessing damages sought in this case. It will be noted that the plaintiffs in addition to reserving their rights to claim future damages for the continuing trespass, as set forth, also pray that the defendants be required to remove the water standing on their property and reserve their right to claim damages for indemnification of necessary expenses to be incurred on account thereof in the event the defendants failed to do so. They have set no monetary value on this and pray for none.
The trial court apparently tried and decided this case as though it were an expropriation *798 case. He apparently used the formula found in the last paragraph of the appraisal report of realtor Kuebel which reads as follows:
"It is the further opinion of your appraiser that if the rights of ownership from the lake were taken away from the two remaining parcels that each parcel would suffer a loss in value of $1000.00. In other words, the two remaining parcels would be worth $5,728.00 each or $11,456.00 or $4,150.00 per acre."
It will be noted that the figure of $11,456 subtracted from the market value of October 8, 1958, of $17,500 in the preceding paragraph, comes to the exact figure awarded by the district judge.
We do not think the facts in the record justify this assumption. The plaintiffs in the case do not allege that they have been deprived of one foot of their property. The survey on the ground or the plat shown on an ownership map will show they still own a rectangular tract of land known as Grove 57, measuring 168.20 feet by 1294.86 feet. Of course the contour has been radically changed by the actions of the defendant in that, whereas it was level before the dirt was removed, it now is cut in half and 683.04 feet × 168.20 feet in the center of the tract is covered by a lake measuring in some places up to a depth of 35 feet. Plaintiffs have not asked for severance damages nor have they asked for damages by reason of a diminution in value of their property. They have simply asked for pay for their dirt and that we enjoin the defendants to remove the water standing on their property. They have asked for no alternative moneyed judgment for this. They have, as we have stated, reserved their rights to claim future damages, but as the case now stands, and as we see it, the only item of damages we can consider is the value of the dirt in place on plaintiffs' property at the time it was removed. Evidence in the case shows that the defendant, T. L. James & Company, Inc., collected from the Highway Department $1.50 per cubic yard for the dirt delivered to and placed in the fill on the right of way upon which the highway was being constructed.
Counsel for defendant argue that there cannot be two separate estates, one of the land and the other of the soil. They say the law does not permit same. They concede, however, that shells, sand, gravel, coal, and other minerals are severable and are articles of commerce. We think that they could well have added to those commodities mud, humus, top soil, leaf mould, and other forms of dirt sold and used to improve lawns, flower gardens, vegetable gardens, etc. We know of some large corporations whose business is exclusively that of selling mud and others which sell sand, leaf mould, top soil, sod, and other types of dirt used to improve and make flower beds, etc. The courts have recognized the severability of dirt in cases wherein they have allowed for the cost of ordinary dirt taken from the owner's land as opposed to damages by reason of the taking. Hebert v. T. L. James & Co., La. App., 72 So.2d 754.
In the present case there is testimony in the record that dirt was stockpiled at or near Kenner and was for sale at 10 cents per cubic yard. Of course, this is a commodity of commerce subject to barter and sale, entirely separate and apart from the owner's lot on which he happens to stockpile the commodity.
In expropriation or condemnation proceedings, market value is a fair criterion for the fixing of compensation for damages for a taking of property. It is the price which would be agreed upon at a voluntary sale between a willing seller and purchaser taking into consideration all the available uses for the land. Of course, this contemplates parties dealing at arm's length, and each has a right to decline or accept an offer to sell or buy. In the present case the evidence shows that there was never a willing seller. In fact it was practically a year after the taking before the *799 plaintiffs discovered their loss, during which time overtures were being made by at least some of the defendants through realtors interposed to purchase the property, which offers were rejected.
The fact that the dirt at issue in this case eventually became the fill of the Highway Department for a public use does not in our opinion bring this case within the eminent domain cases. In fact although plaintiffs seem to make no distinction between the humus and the dirt as to value, the record shows that 4,000 cubic yards of this dirt went to the property of Joe W. Brown, defendant, and was not used on a public project. T. L. James & Company, Inc., simply went on the dirt market and bought some dirt in the same manner that they would have bought shell and cement except they failed to consult or obtain the permission of these plaintiffs to use their dirt and have never paid them for same. T. L. James & Company, Inc., could have used this dirt on any number of private projects had they chosen to do so. The mere fact that it was conveniently located to the fill required is the reason that they used this land rather than haul it from some less-favored location. The evidence in the case as to the value of the dirt taken by defendant is not very satisfactory. One witness testified that dirt stockpiled near Kenner, some 12 to 15 miles from this place, could have been bought at 10 cents per cubic yard. Counsel for T. L. James & Company, Inc., stated that although James & Co. sold the dirt at $1.50 per cubic yard to the Louisiana State Highway Department and delivered in place their fill that they only netted 15 cents per cubic yard. If we permitted the judgment of the lower court in the amount of $6,044 to stand, this would mean that the defendant, T. L. James & Company, Inc., would be enriched to the tune of $6,000 by its own negligence and wrongdoing. In our opinion it would be a desecration of all rules of equity to permit an unjust enrichment of this kind. To permit defendant, James & Co., a private corporation, to go upon a person's property without any right to take therefrom that person's valuable property and sell it at a profit to itself and retain the money is certainly contrary to all rules of equity and justice. This would be particularly true where the wrongdoer had previously, without success, attempted to obtain the property.
We find an old case decided in 1931, during the depression, in which the Court upheld an award of 25 cents per cubic yard, plus one cent per cubic yard for each additional 100 feet over 500 feet, for the unlawful taking of dirt from plaintiff's property without authority. Booth v. Louisiana Highway Commission et al., 171 La. 1096, 133 So. 169. In this case they cited an older case where the Court allowed 75 cents per cubic yard for earth taken from the plaintiff's property. Of course the facts in those cases may be entirely different from the facts in the case at bar, and would not set a criterion for fixing a value on dirt.
The authorities as to the value of dirt taken from a person's property are rather meager, but by analogy to the cases on cutting and taking of timber from a person's property, we think it fair to apply the rule of good faith and bad faith. In this case the trial judge, having found that the defendant was in good faith, and we, having subscribed to that finding, do not feel that we can justifiably assess the value of the dirt delivered to the fill at $1.50, which, we might say, is the manufactured state of the dirt as compared to the manufactured timber for which trespass in bad faith is assessed, as opposed to the dirt in place as compared to the stumpage value of timber in the timber cases.
We are referred to several cases, notably State of Louisiana Through Department of Highways v. Glassell, 226 La. 988, 77 So. 2d 881, wherein the Supreme Court affirmed the lower court's allowance for full acreage price for a borrow pit. All those were expropriation cases where the defendant's property was either taken or damaged, and the Court felt that giving the value of property *800 taken would certainly exceed the amount allowed for taking a portion of the property or damaging the property. Again the defendants had no alternative but to accept the price eventually awarded for the property, those being condemnation proceedings.
To bring this case under Article I, Section 2 of the Constitution, LSA, we would have to find that the taking of plaintiffs' property was appropriated for public purposes intentionally and purposefully. Angelle v. State, 212 La. 1069, 34 So.2d 321, 2 A.L.R.2d 666, and cases cited therein. Defendants negative any contention that the taking was purposeful or intentional; on the contrary, they affirmatively allege and attempt to prove that the taking was inadvertent and unintentional.
We think, however, that the plaintiffs should be adequately compensated for the dirt and have arrived at a figure of 20 cents per cubic yard or a total of $16,005. If defendant made 15 cents per cubic yard on his dirt legally taken, it seems fair to add 5 cents for dirt which plaintiffs had refused to sell.
The only defense is one of contributory negligence which we consider frivolous. Defendant claims that because plaintiffs did not erect monuments, fences, signs, billboards or walls around their property that they were negligent to the extent that they should be barred from collecting damages for their trespass and wrongdoing. Defendant has cited no rule of law nor case to support such a contention and we doubt that he can do so. Using his same argument, had he properly marked the bounds of his property, as he seems to imply there is a legal duty to do, then the captain of the dredge in charge of the excavation and removal of the dirt would have known to stop at defendant's boundary where marked.
For the reasons assigned, the judgment of the lower court is amended by increasing the award to plaintiffs to $16,005, and by further reserving plaintiffs' right to sue for future damages as prayed for in their petition; in all other respects the judgment is affirmed.
Amended and affirmed.