221 So.2d 570 (1969)
Charles F. GALLO
v.
Leon SORCI, d/b/a L. P. Sorci Sand Company.
Batolo GALLO
v.
Leon SORCI, d/b/a L. P. Sorci Sand Company.
Nos. 3389, 3390.
Court of Appeal of Louisiana, Fourth Circuit.
April 7, 1969.
Rehearing Denied May 5, 1969.
*571 Jerald N. Andry and Gilbert V. Andry, III, New Orleans, for plaintiffs-appellees.
Cabibi & Cabibi, Charles E. Cabibi, New Orleans, for defendant-appellant.
Before SAMUEL, HALL and BANETTE, JJ.
BARNETTE, Judge.
These two consolidated cases are identical in all respects except as to the respective amounts of recovery sought. The plaintiffs seek recovery of damages for trespass.
The plaintiffs own adjoining long narrow tracts of land running back from the Mississippi River in St. Bernard Parish including batture and riparian rights. The plaintiff Charles F. Gallo (proceeding No. 3389) owns a tract 50 feet wide, which, for the purpose of this opinion, we will refer to as lot 5. The plaintiff Batolo Gallo (proceeding No. 3390) owns a tract 78 feet wide, which we will refer to as lot 6. By separate suits filed on the same day and numbered consecutively in the district court, the plaintiffs allege trespass and seek recovery of damages or recompense for sand alleged to have been taken from their respective lots by the defendant, Leon Sorci, without their knowledge or consent.
After trial below, judgment was rendered for plaintiffs against the defendant, Leon Sorci, doing business as Sorci Sand Company, in the amounts of $612.95 for Charles F. Gallo and $377.20 for Batolo Gallo. The Charles Gallo judgment included an item of $150 for an expert witness fee assessed as cost. From these two separate judgments *572 the defendant has appealed suspensively.
Plaintiffs' suits were filed on December 26, 1962. Defendant's answers were filed on August 11, 1967, and trial was had on December 14, 1967. There is nothing in the record to explain the long delay between the filing of petitions and the answers. The lapse of six years from the approximate dates of the trespasses complained of until trial of the case must certainly have affected the accuracy of the testimony of the witnesses in their attempts to recall events long past. This factor should be considered in weighing the probative value of their testimony, particularly as to dates.
The plaintiffs each alleged in their respective petitions:

"III.
That at dates and times unknown to your petitioner the defendant, Leon Sorci, and/or his agents, and/or his employees, without the knowledge and/or consent of your petitioner herein did commit trespasses upon the property above described and did remove therefrom wantonly and also maliciously, sand from the batture; said sand composing the natural formations of said batture.

IV.
That the batture property of your petitioner is not easily accessible, that it is not able to be viewed except by ascending the protective levee; that your petitioner first learned of the trespasses to his property and the taking of sand from his property, by the defendant, in the latter part of April, 1962; that he could not verify this information until the high waters of the Mississippi River had receded to a level below the batture in late August, 1962."
Much of the testimony on trial related to the factual question as to whether the alleged trespasses were committed within a year of the filing of suit. Both counsel briefed and argued in both courts questions of law and fact which relate to prescription; but we have carefully searched both records and fail to find that an exception or special plea of prescription was filed by the defendant. The word "prescription" or "prescribed" is not to be found in either the petitions or the answers. The only reference to it in any of the pleadings is such as may be inferred from the two above articles in plaintiffs' petitions. Defendant's answer in each case was a simple general denial. The peremptory exception of prescription is one which must be specially pleaded. It cannot be supplied by the court even though it may appear to be valid. LSA-C.C.P. art. 927; LSA-C.C. arts. 3463, 3464; see case citations, infra.
It is apparent that the plaintiffs were aware of the possibility that their petitions would invite an exception of prescription unless they made some allegation to negate prescription. For this reason, they allege in article IV of their petitions that they had no knowledge of the alleged trespasses until a date within a year of the filing of suit. Since the date of the trespass was alleged to be unknown, and thus not necessarily prescribed, it would have been proper for the defendant in pleading prescription to allege pertinent facts as a basis for his plea. In that event the exception would properly have been referred to the merits, and if the facts were proven, it would then have been incumbent upon the plaintiffs to meet the issue by alleging and proving their lack of knowledge of the trespass until within a year of suit. The plaintiffs' anticipation of such a plea by defendant and their taking the initiative in alleging a fact to negate prescription, did not in our opinion relieve the defendant of the clearly expressed provisions of law that the exception must be specially pleaded.
During the course of trial, testimony which would have been relevant to the issue of prescription was offered without objection. Neither counsel mentioned that prescription had not been pleaded. We have considered whether under LSA-C.C.P. *573 art. 1154 we might therefore treat the pleadings as having been amended to conform to the evidence by the express or implied consent of the parties. It is our opinion, however, that article 1154 relates to fact pleadings and does not authorize the amendment of pleadings to conform to the evidence when the pleading to be supplied is a peremptory exception which the Code of Civil Procedure expressly requires to be specially pleaded.
There is an excellent discussion of the liberal pleading concept of LSA-C.C.P. art. 1154 by the Honorable Albert Tate, Jr., Presiding Judge of the Third Circuit Court of Appeal, in which he cites several cases where the concept was applied.[1] In none of the cases cited do we find authority for extension of the provisions of article 1154 for the waiver by implied consent of the express provisions of article 927 relative to the peremptory exceptions of prescription and res judicata.
Prescription is procedural but may impose upon the pleader the burden of proving affirmatively certain facts which operate as a procedural bar to an otherwise valid cause or right of action. As in any plea of affirmative defense, the reason for the requirement of a special pleading is to place the adverse party on notice so that he will be prepared to meet the issue. Another reason for requiring the exception of prescription to be specially pleaded is that where there exists a moral obligation it is personal to the obligor whether he wishes to avail himself of the legal bar to the action to avoid the obligation.
It might be argued with some persuasion that neither of these reasons for requiring prescription to be specially pleaded by the defendant is present in this case. First, the plaintiffs in anticipation of defendant's exception of prescription pleaded affirmatively a fact in negation of prescription and thus, arguably, put the question at issue. Secondly, in view of the arguments and briefs filed in both courts, it could hardly be said that the defendant has elected not to avail himself of the provisions of LSA-C.C. arts. 3536 and 3537.
Regardless of these circumstances, we know of no authority, with the possible exception of Gayoso Co. v. Arkansas Natural Gas Corporation, 176 La. 333, 145 So. 677 (1933) (which we will discuss more fully below), for applying this rationale to justify an exception to the specific requirement of LSA-C.C.P. art. 927. Furthermore, it would be an unwise jurisprudential precedent to suggest that the express requirement of article 927 under certain factual circumstances could be avoided by the application of the broad liberal pleading concept of LSA-C.C.P. art. 1154. Once the door is opened which exposes article 927 to exceptions according to circumstances peculiar to a given case, the exceptions become as numerous and varying as there are different circumstances. The article would then be meaningless.
In Gayoso, the Supreme Court said:
"Plaintiff, in its brief, expresses grave doubt as to the appropriateness of urging prescription under an exception of no cause of action. It is elementary that prescription must be expressly and specially pleaded. Civ.Code, art. 3464. Were it not that plaintiff has so drafted its petition as to present the question of prescription as part of the case, we should feel called upon to apply the rule that prescription must be expressly and specially pleaded. In the present instance, plaintiff, after alleging that the defendant, the Arkansas Natural Gas Corporation, has refused to recognize its claim to the mineral rights on the ground that these rights have expired by the prescription of ten years by reason of nonuse of the rights by plaintiff or its ancestors in title for that period, proceeds to allege, in five consecutive paragraphs of the petition, facts for the express purpose of showing that these *574 rights have not expired by the ten-year prescription. Therefore, it may be considered that plaintiff, by its form of pleading, has waived its right to insist upon the urging of prescription by a formal plea, for why should it, with painstaking care, seek to show in its petition that prescription has not accrued? This ruling, the record and briefs satisfy us, will result in injury to no one. We shall proceed therefore to consider the question of prescription." 145 So. at 678.
In this case plaintiffs' petitions fall far short of the allegations in Gayoso. As stated above, only by inference is the question of prescription made an issue in this case. Furthermore, the conclusion we have reached that prescription has not properly been put at issue is supported by the following cases: Orleans Parish School Board v. Manson, 241 La. 1029, 132 So.2d 885 (1961); Dunlap v. Berthelot, 122 La. 531, 47 So. 882 (1908); Morgan v. Taxicab Bonding Association, 204 So.2d 642 (La. App.4th Cir. 1967); Consolidated Loans, Inc. v. Smith, 190 So.2d 522 (La.App. 1st Cir. 1966; Bourgeois v. Ducos, 182 So.2d 539 (La.App. 1st Cir. 1966); Pate v. Gisclair, 162 So.2d 729 (La.App. 1st Cir. 1964); Beam v. Dudding, 43 So.2d 73 (La.App. 1st Cir. 1949).
Counsel for defendant relies upon the authority of Stamper v. Arkansas Louisiana Gas Company, 187 So.2d 134 (La.App. 2d Cir. 1966), and Lay v. Garriga, 19 So. 2d 665 (La.App.2d Cir. 1944), which correctly state the burden of proof carried by the plaintiff to negate prescription when specially pleaded by establishing that he had no knowledge of the damage or trespass until within a year of the filing of suit. In both the cases cited there was a special plea of prescription, except for which the question of burden of proof would not have been reached.
We are convinced that the evidence preponderates in favor of a factual finding that the trespasses complained of in these two cases occurred not later than December 8, 1961, and that the plaintiffs had knowledge thereof at that time. Since we cannot supply the exception of prescription, the failure of plaintiffs to prove their allegations in negation thereof is immaterial.
We do not have the benefit of the trial judge's reasons for judgment and do not know if he considered prescription to be a properly pleaded issue. His judgment, of course, was based upon a finding of fact that a trespass was committed and sand removed by the defendant from plaintiff's property. We must agree that the evidence preponderates in favor of this conclusion.
Several adjacent tracts of land were referred to by the witnesses in describing the defendant's sand digging operations. It would be helpful to a discussion of the factual issues to locate them respectively. Proceeding down river on the east bank the tracts are located in the following order: Arthur M. Kitchen, George Andres, Marie Gallo, Charles Gallo, Batolo Gallo, and Robert (Bobby) Gallo. The testimony relates only to the portions of the tracts lying between the levee and the river bank.
The defendant contracted for the digging of sand and alluvial soil from the properties of George Andres and Marie Gallo in October or November of 1961. According to the testimony, certain dray receipts, and other evidence he removed sand or fill dirt from both tracts in November and to December 8, 1961, at the latest. Marie Gallo was displeased with the digging on her property and stopped the defendant from further digging after two or three days. Thereafter the defendant purchased the adjacent tract owned by Mr. Andres on December 28, 1961, and the next tract upriver from Mr. Kitchen on January 2, 1962. He then went about building roads and generally preparing his newly purchased property for his sand digging operations. Much of the testimony of the witnesses related to events associated timewise with Sorci's purchase and *575 development of that property. That testimony was relevant principally to the question of prescription and need not be discussed.
While digging sand and alluvial deposits from the Marie Gallo tract, Sorci's dragline operator, Sam Collins, encroached upon lots 5 and 6 belonging to plaintiffs. The plaintiffs were apprised of this fact at that time by Peter Rodrigue. Rodrigue was digging on his own behalf on the property of Bobby Gallo and testified that he saw defendant's dragline, operated by Collins, digging on plaintiffs' lots. He described a "hole" allegedly dug by Collins.
The witnesses Anthony Murphy and Sam Collins verified the encroachment on lots 5 and 6 from the Marie Gallo property. The testimony supports the conclusion that there was no encroachment on lots 5 and 6 after Marie Gallo stopped the digging.
George Andres was paid 15 cents road fee for each load of sand hauled across his property, but testified that he was not there to see where the sand came from. Other witnesses denied knowledge of defendant's encroachment on plaintiffs' properties and the defendant specifically denied the alleged trespasses.
From this testimony the trial judge found for plaintiffs. There was certainly no manifest error in his judgment on this issue and it will not be disturbed.
Joseph J. Krebs gave expert testimony as a surveyor and consulting engineer. He surveyed plaintiffs' properties in December, 1962. He explained his method of estimating the volume of sand removed from the "holes" on plaintiffs' properties and concluded that 444.52 cubic yards were removed from lot 5 and 273.63 cubic yards were removed from lot 6. He explained the difference between a cubic yard of dirt in its natural state and a cubic truck yard. In its natural state soil is very compact and when excavated and loaded into a truck it is loose and contains voids. It is estimated that the truck measurement is 20 to 30 percent greater. There was no testimony in contradiction of Mr. Krebs' estimate and method of computing the amount of truck yards, and it will be accepted.
Mr. Krebs was questioned as to the prevailing market price of sand fill at the time in question and he said from $1.05 to $1.20 per truck yard "delivered and spread"; the price varying according to the distance of delivery. There was no other testimony on value, except to the extent that the record reveals the price paid by Mr. Sorci to Mr. Andres and Marie Gallo.
Since the trial judge gave no reasons for judgment we have attempted through our own mathematical calculation to determine the formula by which he arrived at the respective amounts awarded to the plaintiffs. If he used Mr. Krebs' figure of 30 percent added to the cubic yards in the natural state to determine the number of truck yards, his award was approximately $1.07 per cubic truck yard. Thus, it appears that he used the basis of value given by Mr. Krebs for sand delivered and spread.
The plaintiffs rely upon Woods v. Slocum, 179 So.2d 464 (La.App. 3d Cir. 1965), for authority that the proper measure of damage for removing dirt in trespass is the cost of replacing the dirt which was removed. They contend the cost per truck yard delivered and spread as used by the trial judge was correct. There is a material difference however in the two cases. In Woods v. Slocum, supra, the court found that the dirt taken was from land to be used for commercial or residential purposes and plaintiffs had planned to use the dirt for fill to enhance the value of the land. The measure of damage therefore was the cost of replacing the fill dirt.
There does not appear to be any one formula for computing damages in cases *576 of this kind. The court said in Woods v. Slocum:
"In the East case [East v. Pan American Petroleum Corp., 168 So.2d 426 (La. App.3d Cir. 1964)], supra, we held that no hard and fast rule can be laid down for the measurement of damages caused by the removal of dirt from the property of another. 15 Am.Jur. 515, Verbo Damages, Sec. 107. In some cases the proper measure is the cost of replacing the dirt on plaintiff's property. Joseph v. Netherton Company, [La.App.] 136 So.2d 556 (3rd Cir. 1962). In others, the measure of damages is the sale value in place of the dirt removed. DeHart v. Continental Land and Fur Company, 205 La. 569, 17 So.2d 827; Amite Gravel & Sand Company v. Roseland Gravel Company, 148 La. 704, 87 So. 718; Derbofen v. T. L. James & Company, 148 So.2d 795, 1 A.L.R.3d 793 (4th Cir. 1962). Other methods also may be proper under the circumstances." 179 So.2d at 466.
The courts have considered the factor of wilfull trespass, as opposed to the taking in good faith, in determining the measure of damage. In Amite Gravel and Sand Co. v. Roseland Gravel Company, supra, and in Sanders De Hart v. Continental Land and Fur Co., supra, the Supreme Court found that the taking of sand and gravel and shells in good faith only entitled plaintiffs to recovery of damage on the basis of the value of the material in place. This was the measure of damage used by us in Derbofen v. T. L. James & Company, supra, upon a finding that the taking was in good faith.
In Joseph v. Netherton Company, supra, the court found that the city residential lots damaged by removal of dirt would cost $1,000 to restore to their former condition, which it adopted as the measure of recovery. There was no mention of bad faith.
The portions of plaintiffs' lots from which the sand was taken and the Marie Gallo property were long narrow strips of alluvial soil extending from the levee to the river. The boundaries were not marked and were located by standing on the levee and projecting an imaginary line by sight from the visible boundaries on the other side of the levee. From this circumstance, and the absence of proof that the defendant acted in bad faith, we must conclude that the trespass was in good faith.
The property in question was neither commercial nor residential. It is subject to overflow, as disclosed by plaintiffs' pleadings in article IV of their petitions, and there is no evidence that it was damaged or rendered unfit for any purpose which they had intended to make of it. Accordingly, we will assess damages on the value of the soil in its natural state.
The testimony of Marie Gallo and George Andres, certain check stubs, and a memorandum filed in evidence established that defendant paid Andres 50 cents per cubic truck yard and Marie Gallo 35 cents. He also paid Andres 15 cents per load (not yard) for the use of Andres' road in hauling out the sand from Marie Gallo's property. We will, therefore, accept the figure of 50 cents per cubic truck yard as the measure of damage.
In the case of Batolo Gallo we find that 273.63 cubic yards were dug from lot 6. We will add 30 percent to determine the number of truck yards which comes to 355.72 at 50 cents per yard and arrive at the figure $177.86 due the plaintiff Batolo Gallo.
Using the same method of computation we arrive at 577.88 yards which at 50 cents per yard amounts to $288.94 due Charles F. Gallo.
Just before conclusion of the trial defendant's counsel sought permission of the court to amend his answer to plead alternatively set-off or compensation. His request was denied but defendant was permitted to make a proffer under LSA-C.C.P. art. 1636.
Counsel for defendant asserted that he had just that day learned that his client, *577 Mr. Sorci, had, so he claimed, completely refilled each plaintiff's property with sand pumped from the river to fill his own sand pits and which, in the process, also filled the holes on the property of each plaintiff.
We find no abuse of discretion of the court in disallowing the amendment. Set-off or compensation is an affirmative defense and it would have prejudiced plaintiffs' case to be permitted at that stage of the trial.
For these reasons, the judgment in proceeding No. 3389, entitled "Charles F. Gallo v. Leon Sorci, d/b/a L. P. Sorci Sand Company," is amended by reducing the judgment in plaintiff's favor from $612.95 to $288.94 and as amended is affirmed.
The judgment in proceeding No. 3390, entitled "Batolo Gallo v. Leon Sorci, d/b/a L. P. Sorci Sand Company," is amended by reducing the judgment in plaintiff's favor from $377.20 to $177.86 and as amended is affirmed.
The defendant-appellant is cast for all costs.
Judgments amended and affirmed.
NOTES
[1] Tate, Amendments of Pleadings in Louisiana, 43 Tul.L.Rev. 211, 225-31 (1969).