542 So.2d 35 (1989)
William R. STEPHENS, Plaintiff-Appellant,
v.
INTERNATIONAL PAPER COMPANY, Defendant-Appellee.
No. 20302-CA.
Court of Appeal of Louisiana, Second Circuit.
March 29, 1989.
Claudius E. Whitmeyer, Shreveport, for plaintiff-appellant.
Cook, Yancey, King & Galloway by Eskridge E. Smith, Jr., and Lunn, Irion, Johnson, Salley & Carlisle by Brian D. Smith, Shreveport, for defendant-appellee.
Before MARVIN, NORRIS and LINDSAY, JJ.
LINDSAY, Judge.
The plaintiff, William R. Stephens, appeals from a trial court judgment sustaining peremptory exceptions of prescription filed by the defendant, International Paper Company, and the third party defendant, *36 Bedsole Wood Corporation (hereinafter referred to as "Bedsole").

FACTS
On April 2, 1984, the plaintiff and his brother-in-law, Dr. Donald E. Wolfe, entered into a timber contract with the defendant International Paper Company. The contract allowed the defendant to cut and harvest Timber on property jointly owned by the plaintiff and Dr. Wolfe. The contract also provided for the grant of a servitude allowing defendant ingress, egress and regress across the plaintiff's lands.
On June 22, 1984, the defendant entered into a contract with Bedsole to carry out the actual cutting. Bedsole, in turn, further subcontracted the job to a local contractor, Travis Broadway. Broadway and his crew began operations on or about June 23, 1984, and continued until early August, 1984. During this time, members of the cutting crew allegedly failed to close two gates on the property on numerous occasions, thus allowing portions of the plaintiff's cattle herd to escape. Some of the animals were not recovered.
On August 12, 1985, the plaintiff filed suit against the defendant, seeking a total of $17,590 in damages. This amount included $14,040 for lost cattle (21 yearlings valued at $440 each and 8 cows valued at $600 each), $2,800 for "cowboy" wages, and $100 for fence damage. The plaintiff also asserted that property he owned jointly with Dr. Wolfe was damaged to the extent of $500 as a result of the logging and cutting operations. The plaintiff also alleged that he personally spent 72 hours of his time in searching for the lost cattle.
In his petition, the plaintiff asserted his claim in contract, or alternatively, in tort. Under his tort claim, plaintiff alleged that the actions of the defendant's employees were a continuing tort which did not cease until all of the work on the property was completed.
The defendant filed a third party demand against Bedsole, in which it asserted that Bedsole had contractually agreed to hold the defendant harmless for any damage caused by Bedsole's employees. Both the defendant and Bedsole filed peremptory exceptions of prescription. Each asserted that the one year prescriptive period for tortious activity under LSA-C.C. Art. 3492 was applicable, and that the last logging activity on the plaintiff's property occurred on August 6, 1984. Thus, the filing of suit on August 12, 1985, was not timely.
Depositions were taken of the testimony of the plaintiff, two of defendant's employees, John Marshall Chamberlin and James B. Babcock, and Billy Ray Bedsole, the owner of Bedsole Wood Corporation, the third party defendant. All parties agreed to submit the exceptions of prescription to the court on depositions and briefs in lieu of live testimony.
In his deposition, the plaintiff described the property at issue and drew a diagram. (See our attached schematic drawing which is based upon the diagram drawn by the plaintiff.) The plaintiff testified that he and his brother-in-law jointly owned Tracts B and C, from which timber was removed pursuant to the contract with the defendant. He stated that he also possessed, as lessee, Tract A, individually. His cattle were fenced in on Tract A. In order to reach Tract B, timber cutters were instructed to enter the front gate of Tract A and then pass through Tract A to the back wire gate cut to allow entry into Tract B. This route was specifically approved by one of the defendant's representative, Walt Salter. The plaintiff testified that the men in the cutting crew left one or both of these gates open on numerous occasions, thus allowing portions of his herd to escape. Although the plaintiff was able to recover most of the strays, some of the cattle were never found.
The plaintiff further testified that the logging crew damaged the front gate of Tract A and a 200-foot portion of the barbed wire fence around Tract C. Additionally, the plaintiff claims that they damaged a tree which subsequently fell on the fence between Tracts A and B.
The defendant's employees, James B. Babcock and John Chamberlin, acknowledged that they knew the gates were to be *37 kept closed to keep the cattle from straying. They also acknowledged that the logging crew did not keep the gates closed. For example, Mr. Babcock admitted that he spoke to the plaintiff several times during the course of the timber operation about the problems with the cattle. Mr. Babcock testified that he sent a man to discuss the situation with the foreman of the crew on more than one occasion; he stated that he also wrote to Mr. Bedsole and informed him of the problem.
Mr. Chamberlin, the defendant's forest technician, inspected the work on the plaintiff's land on the following dates in 1984: June 26, July 9, July 19, July 26, and August 15. The final report was dated August 15, 1984, by which time all of the work had been completed. He testified that the crew usually moved off of the property once the last load was removed. He was unaware of any work which the crew would have done after the last load was taken out.
Mr. Bedsole received the load tickets from his subcontractor, Mr. Broadway. These load tickets represented receipts from the wood mill for each delivery. He testified that it was his experience that the last load ticket from the mill indicated that the work had been completed. The last load ticket for timber removed pursuant to the service contract on the plaintiff's land was dated August 6, 1984. Based upon this load ticket, Bedsole settled up with Broadway for the work done on plaintiff's property.
According to the load tickets in Mr. Bedsole's possession, Mr. Broadway submitted a load ticket dated August 7, 1984, on another job on a different tract of land. This indicated that Bedsole's crew had already completed the work on the plaintiff's land and moved on.
Mr. Bedsole testified that after the timber cutting crew finished its work, the only thing left to be done was a final inspection by the defendant's representative. He stated that the job would not be truly completed until final inspection was conducted by the defendant to determine whether the work was done properly and whether any penalty could be assessed against Bedsole under their contract for not properly executing its terms.
On January 19, 1988, the trial court issued its written opinion, sustaining the exceptions of prescription. It found that the plaintiff had no valid action for breach of contract, which would allow application of a ten-year prescriptive period under LSA-C.C. Art. 3499. Additionally, the court found that the plaintiff's only remedy, if any, was in tort.
In considering whether plaintiff's action in tort was timely filed, the court relied upon the load tickets which Bedsole received from Mr. Broadway in determining that the logging operations on the plaintiff's property ceased on August 6, 1984. Thus, the filing of suit on August 12, 1985 was not within the applicable one year prescriptive period. A judgment in conformity with this opinion was signed on February 12, 1988.
The plaintiff appealed the trial court judgment. Plaintiff assigns as error the following: (1) The trial court erred in finding that the plaintiff had no valid breach of contract action; (2) the trial court erred in applying the one year prescriptive period of LSA-C.C. Art. 3492; and (3) alternatively, the trial court erred in finding that the evidence showed that all damages occurred more than one year prior to the institution of suit and that the action had prescribed under LSA-C.C. Art. 3492.

CONTRACTUAL OBLIGATION
The trial court ruled that plaintiff had no remedy for breach of contract because the contract did not provide specifically for the kinds of damages which he claims and because the contract did not impose upon the defendant any duty to protect plaintiff's fences and cattle. Plaintiff contends this was error. He contends that the damages which he sustained arose from implied obligations under the contract, the breach of which justifies his action ex contractu.
Plaintiff further argues that under the circumstances of this case, he has the option of proceeding either in contract or in *38 tort. He contends that he elected to proceed in contract, and is thus entitled to the prescriptive period of ten years for actions for breach of contract found in LSA-C.C. Art. 3499.
It is well-settled that in certain circumstances the same acts or omissions may constitute breaches of both general duties and contractual duties, and may give rise to both actions in tort and actions in contract. In such cases, the applicable prescriptive period is determined by the character which plaintiff gives his pleadings and the form of his action. Federal Insurance Company v. Insurance Company of America, 262 La. 509, 263 So.2d 871 (1971).
The rule that the allegations and the prayer of a petition govern the nature of the action asserted is not without limitation. The courts are not obligated to ascribe to an action the nature or character indicated by the prayer of a plaintiff's petition when the relief requested is unsupported by factual allegations establishing plaintiff's legal entitlement to the remedy sought. Schouest v. Texas Crude Oil Company, 141 So.2d 155 (La.App. 1st Cir. 1962), writs denied, not published (La.1962).
The only provision in the contract between the plaintiff and the defendant relating to the duty of care owed by the defendant is found in paragraph nine. It provides, in pertinent part, as follows:
9. PURCHASER agrees to use reasonable care and to conduct its operations hereunder in an orderly manner so as to minimize damage to any timber not covered hereby....
Plaintiff has not alleged, of course, that any damage was done to the remaining timber on the land. His allegation of damage relates to the loss of his cattle and damage done to the fences and gates. There is no provision in the contract which relates to these damages. Nevertheless, the plaintiff contends that he may maintain this action in contract because the defendant owed him an implied obligation to perform the contract in a good and workmanlike manner, in default of which the defendant was answerable in damages for any ensuing losses. Tiger Well Service, Inc. v. Kimble Production Company, 343 So.2d 1153 (La.App. 3rd Cir.1977).
In Tiger Well Service, Inc., supra, the court cited LSA-C.C. Art. 2769 and former Article 1930 (which was replaced by Article 1994 in the obligations revisions which were effective January 1, 1985).[1] It stated that "under the cited articles every contract for work or services" carries with it the implied obligation to carry out its terms in a workmanlike manner.
Bedsole argues, with validity, that the instant contract is a contract of sale. It is not a contract "to do," and therefore does not contain such an implied obligation to perform in a good and workmanlike manner. Plaintiff's action "ex contractu" cannot be maintained under paragraph 9 of the contract, or through any implied obligation arising therefrom.
We also note that the instant contract contains a provision by which the seller (the plaintiff) granted the purchaser (the defendant) rights of ingress, egress, and regress, over, across and upon the lands of the seller. The evidence shows a representative of the defendant approved the path through Tract A for this access.
Such a timber cutting contract does not only involve the sale of timber. The transaction also requires that the purchaser of the standing timber be allowed to go onto the seller's land to cut or move the timber covered by the contract. The right of ingress, egress, and regress granted in the contract in the purchaser's favor by the seller is a necessary privilege without which the conveyance would be useless to *39 the purchaser. Clark v. Weaver Brothers Realty Corporation, 197 La. 63, 200 So. 821 (1941).
The provision of the contract granting the purchaser the right of ingress, egress and regress creates a servitude of passage. Walker v. Simmons, 155 So.2d 234 (La. App. 3rd Cir.1963). It is well settled in Louisiana that, under the applicable Civil Code provisions, one holding a servitude on another's land is bound to use that servitude in such a manner as to not unreasonably injure the rights of the owner of the servient estate. Thus, if the owner of the servitude uses it in a negligent, unauthorized or unreasonable manner, the owner of the servient estate may sue for damages. See LSA-C.C. Arts. 743 and 745 (formerly, Articles 771 and 774, respectively); Duet v. Louisiana Power and Light Company, 169 F.Supp. 184 (E.D.La.1958); Board of Commissioners of Port of New Orleans v. Illinois Central Gulf Railroad Company, 379 So.2d 838 (La.App. 4th Cir. 1980), writ denied 380 So.2d 1210 (La.1980).
Although the law requires that one who is granted a servitude must use it in a proper manner, this is a general duty rather than a specific contractual duty or obligation assumed by the owner of the servitude; the breach of a general duty results in an action for damages "ex delicto," the breach of a special duty contained in the contract may result in an action for damages ex contractu.
The classic distinction between damages "ex contractu" and "damages ex delicto" is that the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons. Davis v. LaBlanc, 149 So.2d 252 (La.App. 3rd Cir.1963).
In the Federal Insurance Company case, a specific provision of contract between the parties covered the situation presented by the facts, thus allowing application of the ten-year prescriptive period for contracts. Specific contractual provisions, thus justifying application of ten years prescriptive for actions in contract, were also found or alleged with particularity in the petitions in McCrory Corporation v. Latter, 331 So.2d 577 (La.App. 1st Cir. 1976), writ denied 334 So.2d 229 (La.1976); Poole v. Winwell, Inc., 381 So.2d 926 (La. App. 3rd Cir.1980); Free v. Franklin Guest Home, Inc., 397 So.2d 47 (La.App. 2d Cir.1981), writ denied 401 So.2d 975 (La. 1981); Thompson v. Cane Gardens Apartments, 442 So.2d 1296 (La.App. 3rd Cir. 1983); Yandle v. Stan Weber and Associates, Inc., 466 So.2d 610 (La.App. 5th Cir. 1985); Reine v. Grillot, 505 So.2d 1179 (La.App. 5th Cir.1987); writ denied 512 So. 2d 457 (La.1987); Richardson v. Hubbs, 525 So.2d 736 (La.App. 1st Cir.1988).
For example, in actions for damages by lessees against lessors, resulting from the lessor's general duty to provide safe premises, the courts have generally applied the prescriptive period of one year. In Singleton v. Simms, 438 So.2d 633 (La.App. 4th Cir.1983), writ denied 443 So.2d 1119 (La. 1984), the court found that the plaintiffs had made no claim under any specific provision of the lease, therefore, under the jurisprudence, an action by a lessee against a lessor for damages caused by defects in the leased premises was an action ex delicto and had a prescriptive period of one year. See also Washington v. Battard, 523 So.2d 7 (La.App. 4th Cir.1988).
In the instant case, we find that the plaintiff's action against the defendant did not arise from the breach of a special obligation contractually assumed by the defendant. The only special obligation assumed by the defendant was the obligation set forth in paragraph 9 of the contract, which is quoted above. We cannot say that the damages sought were of a nature that the parties could have contemplated them being recoverable under the contract. The defendant did not contractually assume any special obligation pertaining to the duty of care to be exercised in the use of the servitude.
The action brought by the plaintiff pertains only to a general duty found in the law and sounds only in tort. Thus, we must conclude, as did the trial court, that the plaintiff's action for the claimed damages is one in tort, and not an action for *40 breach of an obligation set forth in the contract. Therefore, the ten year prescriptive period of Civil Code Article 3499 is not available to the plaintiff in this action.
This assignment of error has no merit.

PRESCRIPTIVE PERIOD OF ONE YEAR
We now consider the plaintiff's arguments that the trial court erred in applying the one-year prescriptive period of LSA-C.C. Art. 3492 and in finding that the plaintiff's tort claim had prescribed. The trial court found that the evidence supported a finding that the cutting operations on the plaintiff's land terminated on August 6, 1984. Thus, the filing of plaintiff's suit on August 12, 1985, fell beyond the one year prescriptive period.
The plaintiff argues, however, that the tort continued until August 15, 1984, at which time the defendant conducted its final inspection of the wood cutting site.
Based upon the evidence contained in the record, we find that the trial court was correct in its conclusions. The prescriptive period of Art. 3492 is applicable. Furthermore, Mr. Bedsole identified several load tickets which were received from the wood mill each time a load of chips was delivered. The final load ticket pertaining to the plaintiff's property was dated August 6, 1984, and the records of Bedsole indicated that Broadway's cutting crew who worked this operation were at work on another job the following day. Thus, like the trial court, we can reach no other conclusion except that the timber cutting, and the crew's allegedly tortious conduct, ceased on August 6, 1984. The fact that the final inspection of the property was not made until August 15, 1984, is of no relevance to the issue of when the alleged tort ceased.
Consequently, this assignment of error is also without merit.

CONCLUSION
Based on the foregoing, we affirm the judgment of the trial court. Costs are assessed to the appellant-plaintiff.
AFFIRMED.
*41 MARVIN, Judge, dissenting.
I respectfully dissent, agreeing that the IP timber contract with plaintiff, in the broad sense, is a contract of sale. I would reason, however, that IP and plaintiff expressly contemplated that IP or its agents would "do" or perform whatever was necessary to cut and remove the timber from plaintiff's land in a good and workmanlike manner.
If IP's above stated obligation is deemed only a general duty and not a specific contractual duty, the negligent performance of which is subject to the one-year liberative prescription, I would reason that the corollary timber cutting contract between IP and Bedsole was interpreted by them to mean that performance was not deemed "complete" until IP finally inspected plaintiff's *42 land. This final inspection was done August 15.
Plaintiff's action was instituted on August 12, less than one year later and, in my opinion, was timely, whether IP's duty be general (under tort law) or special (under the contracts).
NOTES
[1] Article 2769 provides: If an undertaker fails to do the work he has contracted to do, or if he does not execute it in the manner and at the time he has agreed to do it, he shall be liable in damages for the losses that may ensue from his non-compliance with his contract.

Article 1930 provided: The obligations of contract [contracts] extending to whatsoever is incident to such contracts, the party who violates them, is liable, as one of the incidents of his obligations, to the payment of the damages, which the other party has sustained by his default.