641 So.2d 586 (1994)
RIDGE OAK DEVELOPMENT, INC. and St. Bernard Home Development, Inc.
v.
Cecil Leitz MURPHY, individually and L. Murphy's Trucking Service, Inc.
No. 94-CA-0025.
Court of Appeal of Louisiana, Fourth Circuit.
June 30, 1994.
Rehearing Denied September 13, 1994.
*587 Glenn E. Diaz, Chalmette, for appellants.
Joseph R. Bossetta, Patrick R. Bossetta, Dorsey & Bossetta, New Orleans, for appellees.
Before BYRNES, JONES and WALTZER, JJ.
BYRNES, Judge.
On September 3, 1993 the Thirty-Fourth Judicial District Court for the Parish of St. Bernard rendered judgment in favor of plaintiffs-appellees, Ridge Oak Development, Inc. and St. Bernard Home Development, Inc. (referred to collectively as the "developers") and against the defendant, L. Murphy's Trucking Service (Murphy), in the sum of $25,000.00. We affirm.
The developers desired the construction of an artificial lake in Oak Ridge Park Subdivision. Murphy is in the business of excavating earth, sand and gravel, transporting same to job sites, and supplying same to home owners and builders in the area. Murphy desired to obtain the dirt excavated from the area that was to become the lake for use as fill for other projects.
In a series of transactions between 1987 and 1990, Murphy agreed to purchase the fill material from the developers, in place, and to remove same from the developers' property, the result of which was to create Acorn Lake in the Oak Ridge Park Subdivision. The excavation was performed in phases, under four separate contracts. The first contract was executed on September 8, 1987, and provided for the excavation of a lake bed which was five acres in area. Murphy excavated the fill from the specified five acres of land in the subdivision. For the right to remove the fill from that area, Murphy paid $125,000.00. That payment was funded by the advance payment of $50,000.00 and by the making of a promissory note for the $75,000.00 balance.
On April 18, 1990, a second contract was entered into by and among those same parties, this time for the excavation of three acres with defendant paying the developers $75,000.00 in advance for the right to remove the fill which was excavated from that area. On that occasion, Murphy allegedly excavated more fill than called for in the contract between the developers and itself.
Murphy then entered into a third contract to purchase the fill from the contiguous two acres. The alleged excess fill which had been previously removed under the second contract was included within that two-acre plot and was paid for by the payment of $50,000.00 for the right to remove the fill from the balance of the two acre plot.
On September 28, 1990 a fourth contract was entered into for the removal of one acre *588 of fill in the specified manner for the usual $25,000.00 price per acre. The work under that contract was completed in October of 1990. The developers claimed that Murphy removed more fill than it paid for under the fourth contract. They sought payment for 1.37 acres of excess fill, at the same price of $25,000.00 per acre as Murphy had paid under the previous contracts. No additional agreement was entered into between Murphy and the developers for any additional amounts of fill material as there had been following the second contract involving the three-acre plot when Murphy allegedly excavated more fill material than it had bought.
On February 13, 1992 the developers filed this suit claiming that Murphy was indebted to them at the rate of $25,000.00 per acre for removing 1.37 acres more of dirt than called for in the contract; $25,000.00 for the cost of removing debris from adjoining property; and 25% attorney's fees.
Murphy filed an answer and third party demand against Eugene I. Estopinal & Associates, Inc., the land surveyor, for negligence. The third party defendant filed an exception of prescription, pleading the liberative prescription of one year. A directed verdict was rendered in favor of the third party defendant. The judgment in favor of the third party defendant has not been appealed.
I. The Developers' Claim Did Not Prescribe In One Year
The main question raised by this appeal is whether the taking of the excess dirt was tortious in nature in which case the claim of the developers would have prescribed in one year prior to the time this suit was filed; or was it a breach of the contract in which case the developers' claim was subject to the ten year prescriptive period; or both.
Although it is necessary for this Court to determine the nature of plaintiffs' claim in order to determine the applicable prescriptive period, plaintiffs are required to plead only such facts as will entitle them to recover under any applicable theory. The "theory of the case" is abolished as a pleading requirement or restriction. Cox v. W.M. Heroman & Co., 298 So.2d 848 (La.1974); Brewhouse, Limited v. New Orleans Public Service Inc., 614 So.2d 118 (La.App. 4 Cir. 1993). When a certain state of facts under the law entitles a party to alternative remedies, both founded upon the identical state of facts, these remedies are not considered inconsistent remedies. Giron v. Housing Auth. of City of Opelousas, 393 So.2d 1267, 1271 (La.1981).
It is well settled that the same acts or omissions may constitute a breach of both general duties and contractual duties and may give rise to both actions in tort and actions in contract. Free v. Franklin Guest Home, Inc., 397 So.2d 47, 49 (La.App. 2 Cir.1981), writ den. 401 So.2d 975 (La.1981), and appeal after remand 463 So.2d 865 (La. App. 2 Cir.1985), writ den. 467 So.2d 535 (La.1985), writ den. 467 So.2d 536 (La.1985); United Gas Pipe Line Co. v. Cargill, 612 So.2d 783, 785 (La.App. 1 Cir.1992); See also: Federal Insurance Co. v. Insurance Co. of No. Amer., 262 La. 509, 263 So.2d 871 (1972).
None of the cases cited by Murphy[1] on the taking of shell, sand and gravel, timber, oil and gas, or other minerals are applicable to this case. We accept Murphy's argument that an analogy can be drawn to the taking of such things, including timber. But the cases Murphy cites do not say that where a plaintiff's claims give rise to actions both in contract and in tort that such claims are limited to tort recovery and tort prescription. The only case that really addresses this question in a factually analogous context is Oberling v. Miller, 86 So.2d 748 (La.App. 1 Cir.1956).
In Oberling the defendant purchased standing timber on the plaintiff's land. The contract specifically required that no cedar trees be cut. The court held as follows:

*589 A trial upon the merits resulted in judgment for the plaintiff's for the 8 cedar trees cut in violation of the terms of the contract, in the amount of $160.
* * * * * *
The appellant maintains the plea of prescription should be sustained on the ground that since the cutting of the trees took place between June of 1952 and January of 1953 and no suit was filed until February 16, 1954, that more than one year had elapsed and the action would be barred by limitation. He argues that this action sounds in tort....
* * * * * *
This case is somewhat similar to that of Transportation Equipment Co. v. Younger Bros., La.App. [1948], 34 So.2d 347. In this last case the plaintiff sued for the balance due for altering and rebuilding a tank trailer. The defendant reconvened for damages for the loss of the tank, claiming it exploded due to negligence of the employees of the plaintiff while it was being repaired. The plaintiff plead the prescription of one year to the reconventional demand, maintaining it was based in tort. The Court took the position that the demand was based on a contract, even though the acts complained of were due to negligence. It was further held that where a contract is breached by negligence, the party damaged may bring his suit either on breach of the contract or on the tort.
* * * * * *
The ruling of the trial court upon the plea of prescription was correct.

Oberling v. Miller, 86 So.2d 748 (La.App. 1 Cir.1956).
The Oberling decision is consistent with general tort law:
Where a claim for breach of contract exists, plaintiff is entitled to plead it and assert the statute of limitations applicable to actions for breach of contract even where an action for conversion arising out of the breach would also lie. However, at trial, plaintiff has to prove that defendant breached some contractual duty above and beyond the general duty not to convert another's property in order for the statute of limitations applicable to actions for breach of contract to apply. [Emphasis added] 54 C.J.S. Limitations of Action, Sec. 52 at p. 87.
In Parro v. Fifteen Oil Co., 26 So.2d 30, 32 (La.App. 1 Cir.1946) no such special contractual duty was found. In Parro plaintiff sued his mineral lessee for damage to his property caused by salt water and waste oil discharge. The court found that no special contractual obligation was breached and held that the action was subject to the one year tort prescriptive period:
In the examination of the entire petition to determine whether or not plaintiff bases his cause of action on the contract of lease, or on one of tort, we must bear in mind the distinction between the two actions. The action on a contract flows from a breach of a special obligation, while an action in tort flows from the violation of a general duty. [Emphasis added]. After a careful review and study of plaintiff's entire petition, we are fully convinced that plaintiff based his action in tort.[[2]] His complaint is such that it could be made by any property owner against a defendant who permits salt water, waste oil, and other refuse to flow as alleged in his petition. His cause of action is not the kind that is open to him because of his contract of mineral lease with the defendant. [Emphasis added]. The contention of plaintiff that the action is based on a contract is a belated one, purely an after thought on his part. Therefore we are satisfied that the prescriptive period applicable is that of one year as provided for by Civil Code Article 3536. Parro, supra, at p. 32.
*590 The instant case is distinguishable from Parro. The developers did not have the same rights against Murphy as they had against third parties generally. They could not sue Murphy for removing dirt as they could any other third party. They could only sue Murphy for removing more than one acre in violation of the terms of the contract.[3] The amount of dirt was the very essence of the contract. As Shakespeare's Portia would have said: "One acre, no more, no less." Therefore, the removal of the excess dirt by Murphy not only violated a general duty as in Parro, it violated a specific contractual provision which gave rise to a specific contractual duty. The parties to a contract have the right to elevate a general duty to contractual status by including that duty as a provision of the contract. Stephens v. International Paper Co., 542 So.2d 35 (La.App. 2 Cir.1989) is consistent with this Court's view of the law.
In Stephens the plaintiff entered into a timber contract with the defendant International Paper company. The contract allowed the defendant to cut and harvest timber on plaintiff's land. The contract also provided for the grant of a servitude allowing defendant ingress, egress and regress across the plaintiff's lands. Plaintiff alleged that on numerous occasions the cutting crew left two gates open allowing portions of plaintiff's cattle herd to escape. Some were recovered at substantial expense and others were never recovered. Plaintiff sued the defendant for the lost cattle and expenses. He founded his claim both in contract and in tort. The contract required that the defendant "use reasonable care ... so as to minimize damage to any timber not covered [by the contract.]" The court found that the contractual provision relating to this duty of care regarding timber did not apply to the missing cattle:
The only provision in the contact between the plaintiff and the defendant relating to the duty of care owed by the defendant is found in paragraph nine. It provides, in pertinent part, as follows:
9. PURCHASER agrees to use reasonable care and to conduct its operations hereunder in an orderly manner so as to minimize damage to any timber not covered hereby.... [Emphasis added]
Plaintiff has not alleged, of course, that any damage was done to the remaining timber on the land. His allegation of damage relates to the loss of his cattle and damage done to the fences and gates. There is no provision in the contract which relates to these damages. [Emphasis added] Nevertheless, the plaintiff contends that he may maintain this action in contract because the defendant owed him an implied obligation to perform the contract in a good and workmanlike manner, in default of which the defendant was answerable in damages for any ensuing losses. Tiger Well Service, Inc. v. Kimble [Kimball] Production Company, 343 So.2d 1153 (La.App. 3rd Cir. 1977).
In Tiger Well Service, Inc., supra, the court cited LSA-C.C. art. 2729 and former Article 1930 (which was replaced by Article 1994 in the obligations revisions which were effective January 1, 1985). It stated that "under the cited articles every contract for work or services" carries with it the implied obligation to carry out its terms in a workmanlike manner. [Emphasis added]
Bedsole argues, with validity, that the instant contract is a contract of sale. It *591 is not a contract "to do," and therefore does not contain such an implied obligation to perform in a good and workmanlike manner. [Emphasis added]. Plaintiff's action "ex contractu" cannot be maintained under paragraph 9 of the contract, or through any implied obligation arising therefrom.
We also note that the instant contract contains a provision by which the seller (the plaintiff) granted the purchaser (the defendant) rights of ingress, egress, and regress, over across and upon the lands of the seller. The evidence shows a representative of the defendant approved the path through Tract A for this access.
Such a timber cutting contract does not only involve the sale of Timber. The transaction also requires that the purchaser of the standing timber be allowed to go onto the seller's land to cut or move the timber covered by the contract. The right of ingress, egress, and regress granted in the contract in the purchaser's favor by the seller is a necessary privilege without which the conveyance would be useless to the purchaser. Clark v. Weaver Brothers Realty Corporation, 197 La. 63, 200 So. 821 (1941).
* * * * * *
Although the law requires that one who is granted a servitude must use it in a proper manner, this is a general duty rather than a specific contractual duty or obligation assumed by the owner of the servitude; the breach of a general duty results in an action for damages "ex delicto," the breach of a special duty contained in the contract may result in an action for damages ex contractu. [Emphasis added].
The classic distinction between damages "ex contractu" and damages' ex delicto" is that the former flows from the breach of a special obligation contractually assumed by the obligor, whereas the latter flows from the violation of a general duty owed to all persons. Davis v. LaBlanc [Le Blanc], 149 So.2d 252 (La.App. 3rd Cir.1963).
In the instant case, we find that the plaintiff's action against the defendant did not arise from the breach of a special obligation contractually assumed by the defendant. The only special obligation assumed by the defendant was the obligation set forth in paragraph 9 of the contact, which is quoted above. We cannot say that the damages sought were of a nature that the parties could have contemplated them being recoverable under the contract. The defendant did not contractually assume any special obligation pertaining to the duty of care to be exercised in the use of the servitude.
The action brought by the plaintiff pertains only to a general duty found in the law and sounds only in tort. Stephens, supra, at 38 & 39.
The Stephens case is distinguishable from the instant case on two grounds:
1. Plaintiffs' claim in the instant case involves a specific contractual provision fixing the amount of dirt to be removed that creates a contractual duty in addition to that imposed by general tort law, which duty Murphy breached. In Stephens there was a specific contractual duty of care, but it was not breached. Only a separate general duty of care was breached.
2. The contract in the instant case was not just a contract of sale. It was also a contract "to do" (See Stephens, supra, at 38) because it required Murphy to excavate the lake.
II. There Was No Manifest Error In The Findings Of Fact of The Trial Court
Applying the manifest error standard of Rosell v. ESCO, 549 So.2d 840 (La.1989) we find no error in the findings of fact of the trial court. Following that standard we cannot say that the trial court was wrong in calculating the amount of excess fill that was taken by Murphy.[4]
Nor can we say that the trial court abused its discretion in calculating the *592 amount of damages awarded. No hard and fast rule can be laid down for the measurement of damages caused by the removal of dirt from the property of another. Gallo v. Sorci, 221 So.2d 570, 576 (La.App. 4 Cir. 1969).
In the instant case the parties had entered into four successive contracts, including the contract that forms the basis of the appeal, in which a price of $25,000 per acre of fill was established.[5] As that value was arrived at by the parties themselves in a consistent series of four freely bargained for, arms-length transactions, we cannot say that the trial court was unreasonable in adopting that value.
Accordingly the judgment of the trial court is affirmed.
AFFIRMED.
NOTES
[1] Amite Gravel & Sand Co. v. Roseland Gravel Co., Ltd., 148 La. 704, 87 So. 718 (1921); Antoine Lumber Co., Ltd. v. Southern Bag & Paper Co., 171 La. 696, 131 So. 852 (1930); Sanders De Hart v. Continental Land & Fur Co., Inc., 205 La. 569, 17 So.2d 827, 834 (1944); Boswell v. Roy O. Martin Lumber Co. Inc., 363 So.2d 506 (La. 1978); Liles v. Barnhart, 152 La. 419, 93 So. 490 (1922); Gallo v. Sorci, 221 So.2d 570 (La.App. 4 Cir.1969); Reymond v. Sumrall, 67 So.2d 925 (La.App. 1 Cir.1953).
[2] Cf. Poole v. Winwell, 381 So.2d 926, 928 (La. App. 3 Cir.1980) where the plaintiff also brought a claim against his mineral lessee for damage caused by salt water discharge. In Poole the court allowed the plaintiff to recover, but limited that recovery to damage caused to adjoining lands that were not subject to the mineral lease. The adjoining lands were covered by a specific contractual provision which held the lessee liable for any damage done to them.
[3] In Section 7 of the September 28th contract, the following provision is made:

In consideration of said work to be performed by Contractor, Contractor shall receive, [sic] the fill which it excavates and removes form [sic] Owner's property, and Contractor shall pay to St. Bernard Home Development and Ridge Oak Development the sum of $25,000.00 for the right to remove the fill in Oak Ridge Park Subdivision being a total of 1 acres, [Emphasis added] of the total sum of $25,000.00; [sic] $15,000.00 dollars to be paid to St. Bernard Home Development and $10,000.00 dollars is to be paid to Ridge Oak Development, Inc., as shown further in the survey attached "Exhibit B" showing the expansion of Acorn Lake dated April 8, 1990 by Steven V. Estopinal, P.E., P.L.S.
This Court agrees with the trial court's interpretation of this provision and the contract as a whole which is implicit in the decision of the trial court.
[4] Plaintiffs asserted claims in the trial court and in their brief against Cecile Leitz Murphy individually and for attorney's fees. As the plaintiffs did not appeal the adverse rulings of the trial court on those claims, nor did they answer this appeal, we cannot consider those claims. LSA-C.C.P. art. 2133.
[5] The contracts did not specifically state: "$25,000 per acre of fill." However, the first contract called for 5 acres for $125,000; the second contract called for 3 acres for $75,000; the third contract called for 2 acres for $50,000; and the fourth contract which is the object of this appeal called for 1 acre for $25,000. It is a simple matter of dividing the dollar amount in each contract by the number of acres to reach a consistent rate of $25,000 per acre.