655 So.2d 724 (1995)
Beverly Taylor GUSTE, et al.
v.
HIBERNIA NATIONAL BANK IN NEW ORLEANS.
No. 94-CA-0264.
Court of Appeal of Louisiana, Fourth Circuit.
May 16, 1995.
*726 Sidney L. Shushan, Jonathan M. Shushan, Guste, Barnett & Shushan, New Orleans, for plaintiffs.
William T. Finn, John Anthony Dunlap, Carver, Darden, Koretzky, Tessier, Finn, Blossman & Areaux, L.L.C., New Orleans, for defendant.
Before CIACCIO, LOBRANO and PLOTKIN, JJ.
CIACCIO, Judge.
In this case, plaintiffs, Beverly Taylor Guste, Roy F. Guste, Dorothy Schutten, and William J. Guste, Jr., appeal the trial court's judgment that dismissed their suit by the granting of an exception of prescription filed by defendant, Hibernia National Bank in New Orleans ("Hibernia" or "the Bank"). Hibernia contends that the exception of prescription was properly granted and further that the trial court erred in failing to address their exception of no cause of action that was filed at the trial level and reurged in this court. For the reasons stated herein, we affirm the judgment of the trial court dismissing plaintiffs' suit, with prejudice, because we find that Hibernia's exception of no cause of action should be maintained.

FACTS
The relevant facts are not disputed. On August 25, 1983, the plaintiffs, by act of credit sale, sold a tract of land to Francois Spoerry International ("FSI"), which FSI intended to develop. The tract contained 295.5 acres and was divided into three parcels, Parcel 1, Parcel 2, and Parcel 3. The total sales price was $4,753,000.00 of which $1,308,460.00 was paid in cash with the balance of the purchase price, $3,444,540.00 being represented by two promissory notes both of which were secured by a vendor's lien and mortgage on parcels 2 and 3. The first note was for $300,000.00, payable 60 days from date and personally endorsed by Francois Spoerry. The second note was for $3,144,540.00, payable in two installments with the first installment of $1,769,306.00 due 18 months from date. Parcel 1 was released from the mortgage in consideration of the cash payment. Parcels 2 and 3 were to be released upon the payment of the installments, first Parcel 2 and then, Parcel 3.
Contemporaneously with the execution of the Credit Sale, FSI executed two Dations en Paiement. (Attached hereto as Appendix "A"). Dation No. 1 transferred Parcels 2 and 3 back to plaintiffs in the event that FSI defaulted on payment of the first installment. Likewise, Dation No. 2 transferred Parcel 3 back to plaintiffs in the event that FSI defaulted on the second installment.
At the same time that the Credit Sale and Dations were executed, plaintiffs and FSI entered into an Escrow Agreement with Hibernia. (Attached hereto as Appendix "B"). The Escrow Agreement specified that pursuant to the Credit Sale between plaintiffs and FSI, plaintiffs and FSI deposited the fully-executed Dations with Hibernia for safekeeping. The Escrow Agreement delineated the circumstances under which the Dations would be released by Hibernia, including the release of the properties from the mortgage which secured the promissory note. The Agreement further stated that the Dations would be released under the following circumstances:
II
Solely at the option of Guste, in the event that on or after nineteen months from the date hereof, the Bank receives (i) an affidavit stating that Guste or the holder of that certain promissory note in the sum of $3,144,540.00, drawn by FSI, dated of even date ("said note") had not received the first installment due on the note ($1,769,306.00), plus the interest which had accrued on said note and (ii) evidence from Guste or the holder of said note that Guste or the holder had notified FSI thirty days previously that it was in default with regard to that installment payment, the *727 Bank shall deliver Dation No. 1 to Guste or the holder of said note.
III
Solely at the option of Guste, in the event that on or after thirty-seven months from the date hereof the Bank receives (i) an affidavit stating that Guste or the holder of said note had not received the second installment on said note ($1,375.234.00), plus the interest which had accrued on said note and (ii) evidence from Guste or the holder of said note that Guste or the holder had notified FSI thirty days previously that it was in default with regard to that installment payment, the Bank shall deliver Dation No. 2 to Guste or the holder of said note.
Finally, the Escrow Agreement contained the following provision with regard to the Bank's liability:
VIII
Guste and FSI hereby agree to, and hereby do, relieve and release the Bank of and from any and all liability to them, their heirs, successors or assigns, provided the Bank shall strictly execute the duties set forth herein. In the event the Bank undertakes or refrains from any action not specifically provided for in this Agreement, Bank shall be relieved and released from any liability on account thereof provided that such act or omission be performed or withheld from being performed in good faith and in the exercise of a degree of care and prudence which is reasonable under the circumstances.
On June 5, 1984, Hibernia and FSI entered into a Loan Agreement for the financing of the development of the property that caused Parcels 2 and 3 to be encumbered with collateral mortgages in the amount of $20,000,000 on each parcel. These mortgages were recorded in St. Tammany Parish where the property was located, taking a second position behind the vendor's lien and mortgage created by the Credit Sale. Plaintiffs allege that this act constituted a breach of the Escrow Agreement by Hibernia, making it liable for damages.
The first note of $300,000.00 was apparently timely paid. However, on February 25, 1985, FSI defaulted on the payment of the installment of $1,769,306.00 that was due under the Credit Sale. When FSI failed to cure this default after notice, plaintiffs demanded that Hibernia release Dation No. 1 to them pursuant to the terms of the Escrow Agreement. Plaintiffs also demanded that Hibernia release its collateral mortgages on the parcels. Although Hibernia released the Dations to plaintiffs, Hibernia subsequently informed plaintiffs that it would not release the collateral mortgages on Parcels 2 and 3.
Plaintiffs filed a lawsuit to foreclose on their vendor's lien and mortgage on Parcels 2 and 3. On March 18, 1987, plaintiffs bid in the parcels at a sheriff's sale, thereby extinguishing Hibernia's second mortgages.
On April 2, 1993, plaintiffs brought the instant lawsuit against Hibernia, asserting a number of causes of action: bad faith breach of the Escrow Agreement, bad faith breach of the Credit Sale, breach of contractual fiduciary duty, fraud, breach of duty as a depositary under La.C.C. art. 2937, and tortious interference with plaintiffs' contract with FSI. In response, Hibernia filed exceptions of no cause of action and prescription.
After a hearing on the matter, the trial court concluded that plaintiffs' petition "sounded in tort," and granted Hibernia's exception of prescription, applying the one-year liberative prescriptive period applicable to delictual actions. The court subsequently vacated its order and held a second hearing, after which the trial court again maintained Hibernia's exception of prescription and dismissed plaintiffs' suit in its entirety. The trial court did not specifically rule on Hibernia's exception of no cause of action.
From this judgment, plaintiffs appeal, contending that the trial court erred in granting Hibernia's exception of prescription. Hibernia seeks affirmation of the judgment and further argues that the trial court erred in failing to maintain its exception of no cause of action. Because we find merit in appellee's exception of no cause of action, we find it unnecessary to reach the merits of the trial *728 court's judgment maintaining Hibernia's exception of prescription.

DISCUSSION
The Exception of No Cause of Action
Hibernia filed an exception of no cause of action in the trial court, which was later reurged in brief and in oral argument before this Court. Although Hibernia did not immediately seek review of the trial court's failure to rule on their exception (presumably because the court ruled in its favor on the exception of prescription), the exception is properly before this court in this appeal. La.C.C.P. arts. 927 and 2163. See Phillips v. State, through Dept. of Transp. & Dev., 400 So.2d 1091 (La.App. 1st Cir.1981), writ not considered, 403 So.2d 70 (La.1981), writ denied, 401 So.2d 1195 (La.1981).
The peremptory exception of no cause of action tests the legal sufficiency of the petition and is triable on the face of the papers; for the purpose of determining the issues raised by this exception, the well-pleaded facts in the petition and any annexed documents must be accepted as true. La. C.C.P. art. 927; Kuebler v. Martin, 578 So.2d 113, 114 (La.1991).
By this exception, Hibernia contends that the Dations executed in this case are against public policy and are null and void, and therefore plaintiffs cannot maintain a cause of action against them for damage thereto. We agree.
Plaintiffs' cause of action against Hibernia rests solely upon the validity of the two Dations executed concurrently with the Act of Credit Sale. Plaintiffs allege in paragraph 15 of their petition that Hibernia's acceptance of the collateral mortgages "resulted in the commercial destruction of the value of the Dations which Hibernia had agreed to protect." Paragraph 15 further alleged, "[t]he mortgages did effectively prevent plaintiffs from recovering Parcels 2 and 3, under the terms of the Dations, the Escrow Agreement and the Credit Sale to FSI."
If the Dations were null and void ab initio as claimed by Hibernia, they would be unenforceable and valueless. If they were worthless from their inception, no damages could flow from any actions of Hibernia to cause the "commercial destruction of the value of the Dations." All of plaintiffs' claims, including breach of fiduciary duty, bad faith, breach of contract, breach of duties as a depositary, and willful creation of a conflict of interest presuppose the validity of the Dations. Accordingly, the nullity of the Dations, as is urged by Hibernia's exception of no cause of action, would mandate dismissal of plaintiffs' petition.
Our review of the Credit Sale and Dations contained in the record show the following language. The Credit Sale provided:
Contemporaneously with the execution of this act of sale, Buyer shall execute two dations en paiement ("dations"), the first of which shall transfer title to Parcels 2 and 3 to the Sellers and the second of which shall transfer title to Parcel 3 to the Sellers. While any indebtedness on the principal and accrued interest remains outstanding and unpaid, the dations shall be held by Hibernia National Bank in New Orleans as "Escrow Agent," pursuant to the Escrow Agreement attached hereto as "Exhibit B". Notwithstanding anything contained herein to the contrary, if within 30 days after having been notified by Sellers that it is in default with regard to the payments due on the second promissory note, Buyer does not pay the amount(s) due, the Escrow Agent shall release the dation(s) according to the terms of the Escrow Agreement. Upon receipt by Sellers of such dation(s), Buyer shall be relieved of its obligation to pay the balance due to Sellers on the second promissory note. The properties returned will be in the same state of merchantability as they were when first conveyed to the Buyer.
The Dations were by Notarial Acts, dated the same date as the Credit Sales, and provided:
(1) Francois Spoerry International, Inc. had executed a mortgage note in the amount of $3,144,540.00 that is "due and payable."

(2) That FSI "wishing to be released from the said indebtedness due and owing" under the provisions of Arts. 2655 to 2659 of the Civil Code, makes unto Guste a dation *729 en paiement "by hereby transferring, conveying, delivering, granting, assigning and setting over unto [the Gustes] here present accepting, all and singular, the property described on Exhibit A."
(3) Guste accepts the transfer in full payment of the note.
(4) Guste has delivered the note to the Notary as fully paid, cancelled and acquitted, and declared that the Note was paid in full.
(5) The Notary cancelled the signature and notarial paraph on the note.
The Dations were signed by all parties and the Notary and two witnesses on August 25, 1983. Although we find no basis to conclude that the declarations were made with any intent to deceive, as of August 25, 1983, all of the crucial declarations contained in the Dations were false.
A Dation en Paiement may be judicially declared to be null and void if it is confected and executed in violation of a prohibitory law or in violation of the public policy of this state. In Miller v. Miller, 234 La. 883, 102 So.2d 52 (1957), in declaring a dation between husband and wife null and void, the Supreme Court stated:
Upon examination of the instrument of August 21, 1942, we find that it was a prohibited contract on its face at the time it was executed. If it was a prohibited contract at the time it was executed, no action or inaction on the part of the parties could afterwards render it valid.
La.C.C. art. 2030 provides:
A contract is absolutely null when it violates a rule of public order, as when the object of a contract is null or immoral. A contract that is absolutely null may not be confirmed.
Absolute nullities may be invoked by any person or may be declared by the court on its own initiative.
For the following reasons we hold that the Dations were prohibited contracts at the time of their execution and were absolute nullities.

PUBLIC POLICY
La.C.C. Art. 3279. Rights created by mortgage
Mortgage gives the mortgagee, upon failure of the obligor to perform the obligation that the mortgage secures, the right to cause the property to be seized and sold in the manner provided by law and to have the proceeds applied toward the satisfaction of the obligation in preference to claims of others.
Paragraph (b) of the official comments states, in part:
The requirement that the seizure and sale must be "in the manner provided by law" emphasizes the long tradition in Louisiana of requiring recourse to judicial procedures and generally rejecting private sale or self-help as a method of execution.
Plaintiffs judicially acknowledge in their petition that the Dations had several purposes or causes:
... first, to prevent the imposition of junior liens on the property; secondly, to facilitate the orderly recovery by plaintiffs of the unreleased portion or portions of the 300 acre tract in the event of a default by FSI on either of the installments; thirdly, to relieve plaintiffs of the delays, costs, and fees associated with a mortgage foreclosure; and finally, to enable plaintiffs to receive the benefit of all enhancement in value of the properties, resulting from, among other things, the development of Parcel 1, and the infrastructure connected therewith, in the event of a default in connection with the payments for either Parcel 2, Parcel 3 or both.
By their own admission, plaintiffs were attempting to create by contract with their debtor a new method of enforcing their mortgage in a manner not provided by law. By the use of the Dations the parties were incorporating in the mortgage a complete waiver of the entire foreclosure procedure thus avoiding the necessity of a judicial sale.
A mortgage may be established only by legislation. La.C.C. art. 3281. The mortgagee is given the right to seize and sell the property and to apply the proceeds to the *730 satisfaction of his obligation in preference to the claim of others. La.C.C. art. 3279.
In addition to a foreclosure action via ordinaria, our laws providing for executory process give to a mortgagee a speedy procedure for enforcing collection of a mortgage note. La.C.C.P. art. 2631 provides:
Executory proceedings are those which are used to effect the seizure and sale of property, without previous citation and judgment, to enforce a mortgage or privilege thereon evidenced by an authentic act importing a confession of judgment, and in other cases allowed by law.
Citation is not necessary and the assertion of defenses and appeal rights are severely restricted. La.C.C.P. arts. 2638 thru 2642. The proceeds of the sheriff's sale are used to pay the seizing creditor and any surplus remaining is paid to the debtor. La.C.C.P. art. 2373.
Other than a foreclosure action via ordinaria, the above cited articles of the Code of Civil Procedure are the exclusive methods provided by law for the enforcement of a mortgage. Any expansion of these procedural remedies lies within the exclusive power of the Legislature. Accordingly, it is against the public policy of this state for mortgagor and mortgagee to incorporate in the mortgage instrument any procedure designed to completely bypass and waive the laws regarding foreclosure so that the mortgagor regains title merely upon default of payment without the necessity of a seizure and judicial sale and with the mortgagor forfeiting any claim on the surplus remaining because of prior payment or because of enhancement of the value of the mortgaged property. For the foregoing reasons the Dations executed in connection with the credit sale violate that public policy and are absolute nullities. See La.C.C. art. 2030.

VIOLATION OF LSA-R.S. 9:3590
LSA-R.S. 9:3590 provides:
Except for the purposes of executory process, confessions of judgment, prior to the maturity of the obligation sued on, are hereby prohibited.
La.C.C.P. art. 2632 provides:
An act evidencing a mortgage or privilege imports a confession of judgment when the obligor therein acknowledges the obligation secured thereby, whether then existing or to arise thereafter, and confesses judgment thereon if the obligation is not paid at maturity.
Although the Dations in this case do not actually contain the words "confession of judgment," FSI clearly states in the Dations that the debt owed to the Gustes was "due and payable." The Dations were executed by notarial act, and contained a statement by the obligor acknowledging the default of an obligation that was not yet due. As admitted by plaintiffs, the Dations were executed in an attempt to avoid the necessity of resorting to judicial process, allowing the Gustes to regain title and ownership of the property automatically on default.
In Phillips v. Bryan, 172 La. 269, 272, 134 So. 88, 89 (1931), the Louisiana Supreme Court stated:
It is plain, therefore, that the statement in the instrument, that the debt was due, was made merely to circumvent the prohibitory law against waiving citation or confessing judgment before the maturity of the obligation to be sued on. Article 11 of the Civil Code declares that individuals cannot by consent derogate from the force of laws enacted in the interest of public policy, and article 12 declares that whatever is done in contravention of a prohibitory law is void.
Articles 11 and 12 of the Civil Code were combined into article 7 by an amendment in 1987. La.C.C. art. 7 provides as follows:
Persons may not by their juridical acts derogate from laws enacted for the protection of the public interest. Any act in derogation of such laws is an absolute nullity.
By the execution of the Dations in this case, the parties have attempted to circumvent the prohibitory law against confessing judgment prior to the maturity of the obligation. Accordingly, the Dations are absolute nullities.

*731 UNAUTHORIZED USE OF A DATION AS A SECURITY DEVICE

The public policy of this State does not allow a creditor, as a condition of the loan, to require a debtor to execute an instrument by authentic act (a dation) that re-transfers title and ownership to the creditor prior to the maturity or default of the debt so that the mere recordation of the instrument perfects the title of the creditor and causes the debtor to forfeit any claims of ownership or interest in sums previously paid on the purchase price. Accordingly, we hold that the use of a dation as a security device in connection with an act of mortgage is prohibited by the public policy of this state causing the Dations to be null and void from the moment of their execution, for the following additional reasons.
The plaintiffs attempted to secure the payment of the balance of the purchase price by using two security devices: (1) a vendor's lien and mortgage and (2) Dations en paiement. The vendor's lien and mortgage are specifically authorized by La.C.C. arts. 3249 and 3279. However, the use of the Dations as a security device finds no support in Louisiana law.
The articles of the Civil Code which contain the provisions on the Dation en Paiement, or giving in payment, Chapter 16, Articles 2655 through 2659, are contained in Title VII of Book III of the Code which regulates the Contract of Sale.
A dation en paiement, or the giving in payment, is defined in article 2655 as it was worded in 1983 as:
The giving in payment is an act by which a debtor gives a thing to the creditor, who is willing to receive it, in payment of a sum which is due.
Although this article was reworded by a 1993 amendment, the amendment did not change the law. The instrument of dation is subject to all of the rules of the contract of sale, except that under the Civil Code mere consent of the parties does not perfect the giving in payment. La.C.C. arts. 2456, 2659. Rather, delivery of the thing is necessary to perfect the giving in payment. La.C.C. arts. 2656, 2657. In the case of immovables, delivery is always considered as accompanying the public act transferring them, whether that act be a sale or dation en paiement. Miller v. Miller, 234 La. 883, 102 So.2d 52, 55 (1957). Civil Code article 2477 provides in part: "[d]elivery of an immovable is deemed to take place upon execution of the writing that transfers its ownership."
Dations are listed in the Civil Code in the section on sales, and are not included among the approved security devices defined by the codal articles. Security devices recognized in the Civil Code consist only of suretyship, pledge, conventional mortgages, legal mortgages, judicial mortgages, privileges and statutory liens. Security devices protect a creditor's privilege against property held as security. Security devices do not transfer title or ownership to the creditor-they only give to the creditor a preference for payment of his claim. Dations are not designated as a security device because a Dation transfers title to the creditor as if it were a sale.
By their own admission, plaintiffs, through the execution of the dations, were attempting to recover title to Parcels 2 and 3 in the event the buyer defaulted, without the delay and expense of foreclosure proceedings. This Court has previously expressed displeasure at similar well-intentioned attempts to bypass the provisions of Louisiana law governing security devices. In DeSalvo v. Finance Funds Group, Inc., 252 So.2d 498, 501 (La.App. 4th Cir.1970), the Court stated:
We believe further balance would be accomplished by holding, where a Louisiana lender spurns legitimate Louisiana security devicesand adopts a device which might, contrary to Louisiana law not only of mortgage but also of antichresis (see C.C. art. 3179), allow the lender to become the owner on default of paymentthat the Louisiana lender having rejected security has no security.
In the present case, we find that plaintiffs sought to create by the execution of these Dations a security device which would bypass Louisiana law that prohibits a secured lender-mortgagee from becoming the owner of the security upon default of the debtor without resort to judicial process. We find no *732 law that permits a dation to be used as a security device.
If the Dations were to be recognized as valid the parties would have entered into a transaction that has always been prohibited by Louisiana lawa common law conditional sale. It is a well-established principle in Louisiana jurisprudence that the concept of a "conditional sale" whereby the seller retains ownership until the price is paid is prohibited under Louisiana law. Barber Asphalt Paving Co. v. St. Louis Cypress Co., 121 La. 152, 46 So. 193 (1908); Parnell v. Baham, 228 So.2d 53 (La.App. 4th Cir.1969), writ denied 255 La. 242, 230 So.2d 92 (1970).[1]
As between the Gustes and FSI, execution of the Dations gave the Gustes title to the property. Default gave the Gustes the absolute right to record the Dations and to cause FSI to forfeit any claims of ownership or reimbursement. Upon notification of default, the escrow agent had no discretion to retain possession of the Dations and FSI had no right to impede physical delivery of the documents. Although the parties may have intended to use the escrow agreement to give some degree of protection to the mortgagor, the deposit did not prevent the Dations from transferring title back to the Gustes since delivery was deemed to take place upon execution of the transfer. La.C.C. art. 2477. In fact, plaintiffs alleged in Article 16 of their petition: "[a]s Hibernia and FSI well knew, the Dations were a reconveyance of Parcels 2 and 3 to Plaintiffs." Assuming plaintiffs' allegations to be correct, the Gustes would have retained title in their names until FSI paid the balance of the purchase pricea prohibited conditional sale.
Since the Dations are absolute nullities for the reasons stated herein, and the Escrow Agreement is, by definition an accessory agreement to the Dations, we hold that the Escrow Agreement given in furtherance of the Dations is likewise an absolute nullity. Accordingly, plaintiffs have no cause of action against Hibernia for any alleged breach thereof.

CONCLUSION
For the reasons stated, we conclude that the Dations, as executed in the present case, were prohibited transactions under Louisiana law and are absolute nullities. Under these circumstances, plaintiffs have no cause of action against Hibernia for any damage resulting from the unenforceability of the Dations or any breach of the Escrow Agreement. For the reasons stated herein, we hold that the exception of no cause of action brought by Hibernia National Bank should be maintained. Accordingly, we affirm the judgment of the trial court which dismisses plaintiffs' suit against Hibernia with prejudice.
AFFIRMED.
PLOTKIN, J., dissents with reasons.

APPENDIX A

Dation 1

UNITED STATES OF AMERICA

STATE OF LOUISIANA

PARISH OF ORLEANS
ACT OF DATION EN PAIMENT
 BY: FRANCOIS SPOERRY
 INTERNATIONAL, INC.
 a Louisiana Corporation
 TO: ROY F. GUSTE,
 BEVERLY TAYLOR GUSTE,
 DOROTHY SCHUTTEN GUSTE and
 WILLIAM J. GUSTE, JR.
BE IT KNOWN, that on this 25th day of August, 1983.
BEFORE ME, the undersigned, a Notary Public, duly commissioned and qualified, in and for the Parish and State aforesaid and in the presence of the witnesses hereinafter named and undersigned:
PERSONALLY CAME AND APPEARED:
FRANCOIS SPOERRY INTERNATIONAL, INC., a corporation organized and existing under the laws of Louisiana, herein represented by C.M. LEGLER, its Vice-President, acting by virtue of and under *733 the authority granted in that certain Resolution of its Board of Directors dated August 24, 1983, a copy of which, certified by the Secretary of the said corporation, is attached hereto and made part hereof, (hereinafter referred to as "FSI")
who declared and acknowledged to me, Notary, that FSI is justly and truly indebted unto Beverly Taylor, wife of/and Roy F. Guste and Dorothy Schutten, wife of/and William J. Guste, Jr. (hereinafter referred to as "Guste") in the full sum of three million one hundred forty-four thousand five hundred forty and 00/100 ($3,144,540.00) DOLLARS represented by FSI's Note in that amount dated August 25, 1983, (as it may have been reduced by payments thereon) payable to the order of BEARER, which Note is due and payable and bears interest as provided therein, which said Note was secured by an Act of Mortgage dated August 25, 1983 passed before John C. Saunders, Jr., Notary Public for the Parish of Orleans and recorded in Book ___, folio ___ of the Mortgage Records of the Parish of St. Tammany, that wishing to be released from the said indebtedness due and owing as hereinabove stated, and availing itself of the provisions of Articles 2655 to 2659, inclusive, of the Revised Civil Code of the State of Louisiana, FSI does hereby make unto Guste a dation en paiement, by hereby transferring, conveying, delivering, granting, assigning and setting over unto:
BEVERLY TAYLOR,
wife of/and
ROY F. GUSTE
herein represented by ROY F. GUSTE, her agent and attorney-in-fact in accordance with that Power of Attorney dated January 11, 1982 before John C. Saunders, Jr., Notary Public, annexed hereto, and ROY F. GUSTE, individually, both persons of the full age of majority and residents of and domiciled in the Parish of Orleans, State of Louisiana, who declared unto me, Notary, under oath, Beverly Taylor Guste in the said Power of Attorney and Roy F. Guste at this time, that they have each been married but once and then to each other, presently living and residing together at 1707 Palmer Avenue, New Orleans, Louisiana, 70118
and
DOROTHY SCHUTTEN,
wife of/and
WILLIAM J. GUSTE, JR.
herein represented by ROY F. GUSTE, their agent and attorney-in-fact in accordance with that Power of Attorney dated January 11, 1982 before John C. Saunders, Jr., Notary Public, annexed hereto, both persons of the full age of majority and residents of and domiciled in the Parish of Orleans, State of Louisiana, who declared unto me, Notary, under oath, that they have each been married but once and then to each other, presently living and residing together at # 4 Richmond Place, New Orleans, Louisiana, 70115,
here present accepting, all and singular, the property described on Exhibit A attached hereto and which property is located in the Parish of St. Tammany, State of Louisiana.
TO HAVE AND TO HOLD said property as herein described unto said Guste, their successors and assigns forever, without any warranty of title whatsoever, but with full subrogation to all the rights and actions of warranty which they have or may have against all preceding owners or vendors.
This transfer and conveyance of said property by said FSI is made and accepted for and in consideration of a sum equal to the entire balance due and owing under the Note which may be due to Guste or the holders of the Note and shall fully extinguish any and all obligations required by the Note and Mortgage and Guste accepts said property in full acquittance and discharge by Guste to FSI of the indebtedness in the amount of aforesaid.
The said indebtedness is represented by the note hereinabove described, there being no credits on either principal or interest, except as hereinabove set forth.
Guste, thereupon delivered to me, Notary, as fully paid, cancelled and acquitted, the above described Note in the sum of three *734 million one hundred forty-four thousand five hundred forty and 00/100 ($3,144,540.00) dated August 25, 1983, and declared that the said Note having been paid in full, he as the last holder thereof does grant a full and complete release of the mortgage securing the payment of the said Note, and does hereby authorize and direct the Recorder of Mortgages of the Parish of St. Tammany, State of Louisiana, to cancel and erase entirely from his records the inscription of said mortgage, recorded in Book ___, folio ___, and I, said Notary, having cancelled the signature and notarial paraph on the said Note, have annexed the same hereto for reference.
By reference to the conveyance and mortgage certificates issued by the Recorder of Mortgages and the Registrar of Conveyances of the Parish of St. Tammany, which are hereto annexed, it does not appear that the said property has been heretofore alienated by FSI or is subject to any mortgages or encumbrances whatsoever, except _________ ____________ and that Guste does take cognizance and that Guste declare themselves satisfied therewith, and releases me, Notary, from any and all responsibility in connection therewith.
THUS DONE AND PASSED, in my office in New Orleans, Louisiana, on the day, month and year herein first above written, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearers and me, Notary, after due reading of the whole.
WITNESSES:
Karen L. Wells
Roxanne M. Marshall
FRANCOIS SPOERRY INTERNATIONAL,
INC.
BY: Charles M. Legler
 Charles M. Legler, Vice President
Roy F. Guste
Roy F. Guste, agent and attorney-in-fact
for Beverly Taylor Guste,
Dorothy Schutten Guste and
William J. Guste, Jr.
Roy F. Guste
Roy F. Guste
John C. Saunders
NOTARY PUBLIC
EXHIBIT "A"
PARCELS II AND III
PARCEL II
Being located in Section 33 Township 7 South, Range 10 East, and Section 4 Township 8 South, Range 10 East, St. Tammany Parish, Louisiana, the following described property:

I.
From the Section Corner common to Sections 4 and 5 Township 8 South, Range 10 East, and Sections 32 and 33 Township 7 South, Range 10 East, St. Tammany Parish, Louisiana, run North 00° 09' 32" West, 2734.28 feet to a point; thence East, 1620.00 feet to a point; this being the point of beginning.
From the point of beginning, run East 1650.00 feet to a point, thence South, 300 feet to a point, thence South 73° 30' West, 370.00 feet to a point; thence South 40° 00' West, 185.00 feet to a point; thence South 20° 00' West, 595.00 feet to a point; thence South 36° 15' East, 650.00 feet to a point; thence South 85° 00' East, 278.00 feet to a point; thence North 69° 00' East, 220.00 feet to a point; thence South 87° 30' East, 225.00 feet to a point; thence South 46° 58' 16" seconds East, 226.69 feet to a point; thence South 450.00 feet to a point; thence South 83° 34' West, 1390.14 feet to a point; thence South 73° 11' West, 646.25 feet to a point; thence North 532.73 feet to a point; thence North 49° 00' West, 146.82 feet to a point; thence North 24° 55' East, 380.00 feet to a point; thence North 35° 15' West, 380.00 feet to a point; thence North 58° 30' West, 250.00 feet to a point; thence North 22° 45' East, 160.00 feet to a point; thence North 10° 30' West, 275.00 feet to a point; thence North 23° 50' East, 350.00 feet to a point; thence North 380 feet back to the point of beginning.

*735 This tract contains 79.17 acres more or less.

II.
All land, shore and water bottom South of the following described line:
From the Section corner common to Sections 4 and 5 Township 8 South, Range 10 East, and Sections 32 and 33 Township 7 South, Range 10 East, St. Tammany Parish, Louisiana, run South 423.00 feet to a point; thence go North 59° 28' 00" East a distance of 351.24 feet to a point; thence go North 74° 28' 00" East a distance of 825.26 feet to a point; thence go North 73° 10' 60" East a distance of 778.04 feet to the point of beginning.
From the point of beginning go North 73° 11' 00" East a distance of 646.25 feet to a point; thence go North 83° 34' 00" East a distance of 1390.14 feet to a point which is the Eastern line of Parcel II.
PARCEL III
Being located in Section 33 Township 7 South, Range 10 East, and Section 4 Township 8 South, Range 10 East, St. Tammany Parish, Louisiana.
I.
From the Section Corner common to Sections 4 and 5 Township 8 South, Range 10 East, and Sections 32 and 33 Township 7 South, Range 10 East, St. Tammany Parish, Louisiana, run North 00° 09' 32" West, 2734.28 feet to a point; thence East, 3270.00 feet to a point; this being the point of beginning.
From the point of beginning, run East 2022.14 feet to a point, thence South 2027.72 feet to a point, thence South 83° 34' West a distance of 1451.24 feet to a point; thence North 450.0 feet to a point thence North 46° 58' 16" West a distance of 226.69 feet to a point; thence North 87° 30' West a distance of 225.00 feet to a point; thence South 69° 00' West a distance of 220.00 feet to a point; thence North 85° 00' West a distance of 278 feet to a point; thence North 36° 15' West a distance of 650.00 feet to a point; thence North 20° 00' East a distance of 595.00 feet to a point; thence North 40° 00' East a distance of 185.00 feet to a point; thence North 73° 30' East a distance of 370.00 feet to a point; thence North 300.00 feet to the point of beginning.
This tract contains 106.429 acres more or less.
II.
All land, shore and water bottom South of the following described line:
From the Section corner common to Sections 4 and 5 Township 8 South, Range 10 East, and Sections 32 and 33 Township 7 South, Range 10 East, St. Tammany Parish, Louisiana, run South 423.00 feet to a point thence go North 59° 28' East a distance of 351.24 feet to a point; thence go 74° 28' East a distance of 825.26 feet to a point; thence go North 59° 28' 00" East a distance of 1424.29 feet to a point; thence go North 83° 34' East a distance of 1390.14 feet to the point of beginning.
From the point of beginning go North 83° 34' East a distance of 1451.24 feet to a point on the North-South line separating Sections 33 and 34, Township 7 South, Range 10 East.

FRANCOIS SPOERRY INTERNATIONAL, INC.

RESOLUTION
"BE IT RESOLVED, that Charles M. Legler, vice-president of this corporation, is duly authorized in the name and on behalf of this corporation to purchase any real estate in the Parish of St. Tammany, the State of Louisiana, or elsewhere, for such amount and on such terms and conditions and with such clauses and stipulations contained in the act of purchase, as he thinks proper and advisable; and also to sell any real estate owned by this corporation for such amount and on such terms and conditions as he may determine or think advisable, and to receive and receipt for the selling price and to give full acquittance and discharge therefore; to borrow *736 such sums of money from any person or company as he may deem advisable; to mortgage any real estate owned by the corporation under a conventional mortgage, for such amounts and on such terms and conditions as he may determine; with full authority on his part to sign and execute any act or acts to contain such clauses, stipulations and obligations as he may deem advisable, including confession of judgment, sale by executory process, waiver of appraisement, and the non-alienation clauses; with further authority to sign and execute any and all documents or deeds, notes and mortgage notes, building contracts, necessary or advisable to carry out fully the foregoing objects and purposes to build and construct houses and other improvements on, or make repairs or additions to property owned by this corporation for itself, or to construct residences or other buildings for others on property owned by them, under contracts direct for such owners, or through any lending agency, and with or without bond, and for such amount and on such terms as said officer deems advisable; the intent of this resolution being to place full authority with said officer to transact completely the business of this corporation as outlined in its charter, in which its objects and purposes are set forth, all without the necessity of the adoption by the Board of Directors of a separate resolution to cover such transaction, or to cover each sale, purchase or mortgage, or the construction of any improvements. On the property of this corporation for itself, or under building contract as contractor for the accounts of others; with further authority to do anything in the premises which may be necessary or advisable to carry out fully all or any of the purposes of this resolution."

CERTIFICATE
I certify that I am the Secretary of Francois Spoerry International, Inc. and that the above resolution is a true and correct copy of a resolution unanimously adopted at a meeting of the Board of Directors of said corporation held at its office at New Orleans, Louisiana on August 24, 1983, all of the members of the Board of Directors being present and voting.
 /s/ [signature]
 Secretary
 Dation 2
 United States of America
 State of Louisiana
 Parish of Orleans
 ACT OF DATION EN PAIMENT
 BY: FRANCOIS SPOERRY
 INTERNATIONAL, INC.
 a Louisiana Corporation
 TO: ROY F. GUSTE,
 BEVERLY TAYLOR GUSTE,
 DOROTHY SCHUTTEN GUSTE and
 WILLIAM J. GUSTE, JR.
BE IT KNOWN, that on this 25th day of August, 1983.
BEFORE ME, the undersigned, a Notary Public, duly commissioned and qualified, in and for the Parish and State aforesaid and in the presence of the witnesses hereinafter named and undersigned:
PERSONALLY CAME AND APPEARED:
FRANCOIS SPOERRY INTERNATIONAL, INC., a corporation organized and existing under the laws of Louisiana, herein represented by C.M. LEGLER, its Vice-President, acting by virtue of and under the authority granted in that certain Resolution of its Board of Directors dated August 24, 1983, a copy of which, certified by the Secretary of the said corporation, is attached hereto and made part hereof, (hereinafter referred to as "FSI")
who declared and acknowledged to me, Notary, that FSI is justly and truly indebted unto Beverly Taylor, wife of/and Roy F. Guste and Dorothy Schutten, wife of/and William J. Guste, Jr. (hereinafter referred to as "Guste") in the full sum of three million one hundred forty-four thousand five hundred forty and 00/100 ($3,144,540.00) DOLLARS represented by FSI's Note in that amount dated August 25, 1983, (as it may have been reduced by payments thereon) payable to the order of BEARER, which Note is due and *737 payable and bears interest as provided therein, which said Note was secured by an Act of Mortgage dated August 25, 1983 passed before John C. Saunders, Jr., Notary Public for the Parish of Orleans and recorded in Book ___, folio ___ of the Mortgage Records of the Parish of St. Tammany, that wishing to be released from the said indebtedness due and owing as hereinabove stated, and availing itself of the provisions of Articles 2655 to 2659, inclusive, of the Revised Civil Code of the State of Louisiana, FSI does hereby make unto Guste a dation en paiement, by hereby transferring, conveying, delivering, granting, assigning and setting over unto:
BEVERLY TAYLOR,
wife of/and
ROY F. GUSTE
herein represented by ROY F. GUSTE, her agent and attorney-in-fact in accordance with that Power of Attorney dated January 11, 1982 before John C. Saunders, Jr., Notary Public, annexed hereto, and ROY F. GUSTE, individually, both persons of the full age of majority and residents of and domiciled in the Parish of Orleans, State of Louisiana, who declared unto me, Notary, under oath, Beverly Taylor Guste in the said Power of Attorney and Roy F. Guste at this time, that they have each been married but once and then to each other, presently living and residing together at 1707 Palmer Avenue, New Orleans, Louisiana, 70118
and
DOROTHY SCHUTTEN,
wife of/and
WILLIAM J. GUSTE, JR.
herein represented by ROY F. GUSTE, their agent and attorney-in-fact in accordance with that Power of Attorney dated January 11, 1982 before John C. Saunders, Jr., Notary Public, annexed hereto, both persons of the full age of majority and residents of and domiciled in the Parish of Orleans, State of Louisiana, who declared unto me, Notary, under oath, that they have each been married but once and then to each other, presently living and residing together at # 4 Richmond Place, New Orleans, Louisiana, 70115,
here present accepting, all and singular, the property described on Exhibit A attached hereto and which property is located in the Parish of St. Tammany, State of Louisiana.
TO HAVE AND TO HOLD said property as herein described unto said Guste, their successors and assigns forever, without any warranty of title whatsoever, but with full subrogation to all the rights and actions of warranty which they have or may have against all preceding owners or vendors.
This transfer and conveyance of said property by said FSI is made and accepted for and in consideration of a sum equal to the entire balance due and owing under the Note which may be due to Guste or the holders of the Note and shall fully extinguish any and all obligations required by the Note and Mortgage and Guste accepts said property in full acquittance and discharge by Guste to FSI of the indebtedness in the amount of aforesaid.
The said indebtedness is represented by the not hereinabove described, there being no credits on either principal or interest, except as hereinabove set forth.
Guste, thereupon delivered to me, Notary, as fully paid, cancelled and acquitted, the above described Note in the sum of three million one hundred forty-four thousand five hundred forty and 00/100 ($3,144,540.00) dated August 25, 1983, and declared that the said Note having been paid in full, he as the last holder thereof does grant a full and complete release of the mortgage securing the payment of the said Note, and does hereby authorize and direct the Recorder of Mortgages of the Parish of St. Tammany, State of Louisiana, to cancel and erase entirely from his records the inscription of said mortgage, recorded in Book ___, folio ___, and I, said Notary, having cancelled the signature and notarial paraph on the said Note, have annexed the same hereto for reference.
By reference to the conveyance and mortgage certificates issued by the Recorder of Mortgages and the Registrar of Conveyances of the Parish of St. Tammany, which are *738 hereto annexed, it does not appear that the said property has been heretofore alienated by FSI or is subject to any mortgages or encumbrances whatsoever, except __________ ___________ and that Guste does take cognizance and that Guste declare themselves satisfied therewith, and releases me, Notary, from any and all responsibility in connection therewith.
THUS DONE AND PASSED, in my office in New Orleans, Louisiana, on the day, month and year herein first above written, in the presence of the undersigned competent witnesses, who hereunto sign their names with the said appearers and me, Notary, after due reading of the whole.
WITNESSES:
Karen L. Wells
Roxanne M. Marshall
FRANCOIS SPOERRY INTERNATIONAL, INC.
BY: Charles M. Legler
 Charles M. Legler, Vice President
Roy F. Guste
Roy F. Guste, agent and attorney-in-fact for Beverly Taylor Guste, Dorothy Schutten Guste and William J. Guste, Jr.
Roy F. Guste
Roy F. Guste
John C. Saunders J
NOTARY PUBLIC
*739
 APPENDIX B
 EXHIBIT
 ESCROW AGREEMENT
 THIS ESCROW AGREEMENT is made and entered into
this day of August, 1983, by and among Francois Spoerry
International, Inc., herein represented by Charles M. Legler,
("FSI"). Beverly Taylor Guste, Dorothy Schutten Guste and
William J. Guste, Jr., herein represented by their duty
authorized agent and attorney-in-fact Roy F. Guste and Roy R.
Guste ("Guste"), and Hibernia National Bank in New Orleans
("Bank") herein represented by 
 I
 Pursuant to that certain credit sale by and between
Guste, as seller, and FSI as buyer, dated this date (the
("credit sale"), Guste and FSI herewith deposit with the Bank,
two fully executed dations en paiment marked "Dation No. 1"
and "Dation No. 2" (attached hereto as Exhibit "A" in globo).
 II
 In the event that on or after nineteen months from the
date hereof, the Bank receives (i) an affidavit stating that
Guste or the holder of that certain promissory note in the sum
of $3,144,540.00, drawn by FSI, dated of even date ("said
note") had not received the first installment due on the note
*740
($1,769,306.00), plus the interest which had accured on said
note and (ii) evidence from Guste or the holder of said note that
Guste or the holder had notified FSI thirty days previously that
it was in default with regard to that installment payment, the
Bank shall deliver Dation No. 1 to Guste or the holder of said
note.
 III
 In the event that on or after thirty-seven months from
the date hereof the Bank receives (i) and affidavit stating that
Guste or the holder of said note had not received the second
installment on said note ($1,375,234.00), plus the interest which
had accrued on said note and (ii) evidence from Guste or the
holder of said note that Guste or the holder had notified FSI
thirty days previously that it was in default with regard to that
installment payment, the Bank shall deliver Dation No. 2 to
Guste or the holder of said note.
 IV
 In the event that Parcell it is released from the
mortgage which secures the payment of said note, the Bank shall
return Dation No. 1 to FSI.
*741
 V
 In the event that Parcell III is released from the mortgage
which secures the payment of said note, the Bank shall return
Dation No. 2 to FSI.
 VI
 The Bank shall observe any further written instructions
executed jointly by FSI and Guste.
 VII
 Any dispute arising out of the escrow agreement as a
result of any doubt which the Bank may have in executing its
duties hereunder shall be resolved in accordance with laws of
the State of Louisiana but should Guste have satisfied the requirements
of Paragraphs II to III, whichever is applicable, in
no event shall the bank withhold the delivery of the appropriate
dation(s) as a result of such 
 VIII
 Guste and FSI hereby agree to, and hereby do, relieve
and release the Bank of and from any and all liability to
them, their heirs, successors or assigns, provided the Bank
shall strictly execute the duties set forth herein. In the event
the Bank undertakes or refrains from any action not specifically
*742
provided for in this AGreement, Bank shall be relieved and released
from any liability on account thereof provided that such
act or omission be performed or withheld from being performed,
in good faith and in the exercise of a degree of a care and prudence
which is reasonable under the circumstances.
 FRANCOIS SPOERRY INTERNATIONAL.
 BY: 
 
 Charles M. Legler Vice President
 
 
 Roy F.Guste, agent and attorney
 in-fact for Beverly Taylor Guste,
 Dorothy Schutten Guste and
 William J. Guste, Jr.
 
 
 Roy F. Guste
 HIBERNIA NATIONAL BANK
 
 
 Junior E. SMITH
PLOTKIN, Judge, dissenting.
Because I disagree with the majority opinion in two respects, I respectfully dissent from that decision. Specifically, I believe that the court wrongly concludes that Hibernia's exception of no cause of action is well-founded. Furthermore, I am of the opinion that the trial court erred when it granted Hibernia's exception of prescription. Thus, I would reverse the judgment of the trial court and remand the matter for further proceedings.
At the outset, it is important to note that the majority opinion fails to include in its recitation of the facts of this case one significant detail. After Hibernia loaned FSI the funds for its development of the parcels and thereby encumbered the property with a total of $40,000,000 in collateral mortgages (which I believe may violate Paragraph VIII of the Escrow Agreement for the reasons discussed infra), Hibernia then proceeded to arrange a number of loan participation agreements with other lenders. Under these agreements, Hibernia sold to the other banks *743 a share of the monies it was owed by FSI. Concomitantly, it relieved itself of a share of the risk associated with lending money to FSI in the event that FSI were to default on the loans (which it eventually did).
As a result of these loan participation agreements, Hibernia was unable to release its collateral mortgages unilaterally once the Gustes demanded return of the property pursuant to the Escrow Agreement they and FSI had entered into with Hibernia. By so doing, Hibernia, in my opinion, extinguished the impartiality that is archetypical of escrow agents. When it executed the Escrow Agreement, Hibernia agreed to act "in good faith" and with "a degree of care and prudence which is reasonable under the circumstances." By engaging in a transaction with one of the parties to the Escrow Agreement that essentially nullifies the entire reason for executing the agreement, I find it highly questionable whether Hibernia discharged the responsibility it willingly imposed on itself. That transgression was compounded when Hibernia took the further step of arranging the loan participation agreements that made it impossible for it to cancel the collateral mortgages unilaterally.[1]
Hibernia, in its brief to this court, argues that "[i]f an escrow agent cannot have other financial dealings with customers that are also parties to an escrow agreement, a lender would effectively be prevented from acting as an escrow agent in the future." Accordingly, Hibernia contends that "[t]aken to its logical extreme, Plaintiffs' position would thus impose the duty on Hibernia to act for Plaintiffs' sole benefit on all of Hibernia's dealings with FSI." In actuality, this concerns is overstated and exaggerated. What plaintiffs' position actually advocates is that a bank acting as an escrow agent may not have other financial dealings with customers that are also parties to an escrow agreement when those dealings could adversely affect the interests of other parties to the escrow agreement. This does not seem to be asking all that much from a party who has been retained, and who has willingly agreed, to act as a neutral third-party.
That being said, for the reasons that follow, I believe that given all of the salient facts of this case plaintiffs have a valid, non-prescribed cause of action against Hibernia. As such, I would remand the matter to the trial court for further proceedings.

The Exception of No Cause of Action
I am compelled to dissent from the majority's analysis of and conclusion concerning Hibernia's exception of no cause of action. Initially, I believe that it is inappropriate for this court to address this issue at this time. As noted by the majority, Hibernia filed an exception of no cause of action in the trial court, but that court never acted on the exception. Although Hibernia reurged its exception at oral argument before this court, this issue was addressed only fleetingly in the briefs submitted to this court. In point of fact, the validity of the Dations was not mentioned in brief until Hibernia filed its surrebuttal brief in response to plaintiffs reply brief; even then, Hibernia only devoted two or three pages to this question. Plaintiffs responded to this issue in their second reply brief. Thus, out of a total of 78 pages of brief filed in this case, no more than five or six pages speak to the issue of the validity of plaintiffs' cause of action.
The majority correctly notes that La. C.C.P. art. 927 permits an appellate court to decide an exception of no cause of action sua sponte. Likewise, La.C.C.P. art. 2163 permits an appellate court to consider a peremptory exception that is filed for the first time in the appellate court. However, both of these articles are permissive, as opposed to mandatory, in nature. Thus, there is no absolute requirement that the appellate court consider such an exception. See Guitreau v. Juneau, 479 So.2d 431, 433-34 (La.App. 1st Cir.1985); South Louisiana Contractors, Inc. v. Freeman, 393 So.2d 461, 463 (La.App. 3d Cir.1981).
In light of the importance of this issue, I would decline from ruling on the merits of *744 the exception of no cause of action at this time. Rather, I would remand the matter to the trial court for a full briefing of the issue and subsequent consideration by this court. If this court wishes to entertain arguments as to the underlying validity of the Dations, it ought at least to have the benefit of a full and complete briefing of this discrete issue by the parties.
As for the majority's analysis of the merits of the exception, it is flawed in a number of respects. First, the majority opinion rests on the faulty premise that "Plaintiffs' cause of action against Hibernia rests solely upon the validity of the two Dations executed concurrently with the Act of Credit Sale." As I see it, simply because the Dations could be null does not necessarily mean that plaintiffs have no cause of action against Hibernia. Rather, as I have already alluded, the language of Paragraph VIII of the Escrow Agreement may, independent of the Dations, have required Hibernia to abstain from any actions detrimental to the value of the property. In other words, even if the Dations were null, Hibernia may still have been under a duty not to further encumber Parcels 2 and 3. That is a question of fact that must be resolved by the trial court after a hearing on the matter.
Second, even if the Dations were null (i.e., they could not have properly effectuated return of the property to the plaintiffs), that should go to the measure of plaintiffs' damages, not the existence of their cause of action. The plaintiffs' cause of action is defined by the Escrow Agreement, not the validity of the Dations. If Hibernia breached that agreement by not complying with the mandates of Paragraph VIII, plaintiffs may in fact be entitled to damages for such wrongful conduct, regardless of the remainder of the agreement and the documents involved. The majority has thus looked to the wrong document in assessing the validity of plaintiffs' cause of action.
Third, the majority wrongly labels the Credit Sale as a conditional sale. Under the particularized facts of this transaction, title to all three parcels did not remain with the plaintiffs once the Credit Sale was executed. Rather, the Credit Sale actually transferred full and complete title to all three parcels to FSI, making FSI the owner of record of each parcel. As such, there was a completed sale that is perfectly valid under the Louisiana law of sales. The majority's contrary suggestion is thus misplaced.
Fourth, contrary to the majority's contention, the Credit Sale was not subject to a suspensive condition. The Civil Code article defining suspensive conditions states that "[i]f the obligation may not be enforced until the uncertain event occurs, the condition is suspensive." La.C.C. art. 1767. In other words, when an obligation is subject to a suspensive condition, the obligee is not entitled to enforce the obligation until after the condition has passed. See also La.C.C. art. 2043 (1870) (When an obligation is subject to suspensive condition, "the obligation can not be executed till after the event."). In this case, the Credit Sale was not an obligation subject to a suspensive condition because, as just noted, once plaintiffs and FSI signed the Credit Sale, title to all three parcels passed to FSI and the obligation was completed. All that remained what FSI's obligation to pay the amounts it owed to plaintiffs.
In point of fact, the only document in this transaction that was subject to a suspensive condition was the Escrow Agreement. Not until the time for FSI's payment to plaintiffs had passed and FSI had either made or defaulted on that payment could either plaintiffs or FSI have forced Hibernia to fulfill its obligations under the Escrow Agreement. There is absolutely nothing prohibited about this arrangement. In fact, the Louisiana Supreme Court has recognized that an escrow agreement, by definition, is an obligation subject to a suspensive condition: "All obligations contracted on suspensive conditions are not escrow agreements but all escrow agreements are obligations contracted on suspensive conditions." Wampler v. Wampler, 239 La. 315, 118 So.2d 423, 425 (1960) (emphasis added).
Fifth, although I am aware of the jurisprudence to the effect that a dation en paiement may not be entered into until a debt is due, I question whether that is the posture of this case. Although the majority states that a debt must be due or in default before a *745 dation may be executed, it offers no guidance as to the meaning of "due." Likewise, my research discloses no authoritative interpretation of when a debt is "due" within the meaning of Civil Code article 2655 prior to its revision.[2]
Even if the debt in question was not due when the Dations were executed by FSI, this does not automatically mean that they are null and void ab initio as suggested by the majority. According to Civil Code article 2656 (both before and after its revision), for a dation en paiement to be effective, there must be delivery to the obligee. At the time FSI executed the Dations, plaintiffs neither received possession nor took delivery of them. Rather, the Dations were immediately delivered to and held by Hibernia until such time as the debt did in fact become due and either it was discharged by FSI or the plaintiffs exercised their rights under the Escrow Agreement. Therefore, at the time plaintiffs received possession of the Dations and thus recovered the property, FSI's debt was due and FSI was in default, thereby satisfying all requirements of Code article 2655 (pre-revision).
Sixth, the possibility exists that even though the documents in question were labelled as dations, they may in fact have been something else. In particular, they may have been innominate contracts that were subject to a resolutory condition.[3] As such, it would not be necessary that they comply with the requirements of Civil Code article 2655 even though they achieve much the same effect (i.e., return the property to the obligee and discharge the debt of the obligor).
Finally, I note that in this case, we are not dealing with one party that has significant bargaining power and thus can unilaterally impose its will on the other party. Rather, we have three sophisticated parties, each of whom likely were ably represented by counsel when this transaction was confected. Thus, there was no danger that any party to this transaction could be taken advantage of by another party. In addition, I find it unacceptable that Hibernia should contract to hold the Dations in escrow (presumably for some amount of compensation or for other indirect benefits such as retaining the Gustes as depositors or attracting FSI as borrowers), but then should be heard to complain that the Dations are legally invalid. Hibernia, as I see it, either should have refrained from participating in the Escrow Agreement or should not be given standing by this court to complain about the fact that the Dations may not have complied with Civil Code article 2655 when it was not prejudiced by operation of the Dations. That right should remain personal to the only party that the Dations could have affected adverselyFSI.

The Exception of Prescription
Because I believe that plaintiffs have, in fact, stated a cause of action in their petition, I turn now to the issue of prescription. In my opinion, the trial court incorrectly granted Hibernia's exception of prescription. That exception clearly posed the question of whether plaintiffs' cause of action sounded in tort or in contract. The trial court, without citing any law or doctrine to support its analysis and without discussing the plethora of jurisprudence cited by both plaintiffs and defendant, blithely concludes that plaintiffs' petition sounds only in tort and thus is subject to one-year liberative prescription. *746 With all due respect, this conclusion is patently wrong.
In order to resolve this question, it is necessary to analyze in detail the nature of plaintiffs' petition and the allegations therein and determine whether it sounds in tort, contract, or both. Unfortunately, no bright-line test exists for determining when a case arises ex contractu or ex delicto. Perhaps the best distinction is that "the former flow from the breach of a special obligation contractually assumed by the obligor, whereas the latter flow from the violation of a general duty owed to all persons." Davis v. Le Blanc, 149 So.2d 252, 254 (La.App. 3d Cir. 1963). More recently, the Louisiana Second Circuit has observed that
[g]enerally, where a person neglects to do what he is obligated to do under a contract, he has committed a passive breach of the contract. If he negligently performs a contractual obligation, he has committed active negligence and thus an active breach of the contract. A passive breach of the contract warrants only an action for breach of contract; an active breach of contract, on the other hand, may also support an action in tort under LSA-C.C. Art. 2315.
Dubin v. Dubin, 25996, pp. 5-6 (La.App. 2d Cir. 8/17/94), 641 So.2d 1036, 1040. Dubin, as well as other Louisiana cases, make clear that a case may simultaneously sound in both tort and contract, making resolution of prescription issues difficult at best. See, e.g., Branch v. Willis-Knighton Medical Center, 607 So.2d 883, 885 (La.App. 2d Cir.1992) ("Generally, one set of factual circumstances can give rise to more than one cause of action, with each cause of action having its own prescriptive period."), rev'd on other grounds, 93-3086 (La. 4/28/94), 636 So.2d 211; see also, e.g., Borden, Inc. v. Howard Trucking Co., 454 So.2d 1081, 1096 (La.1983); Wong v. East Baton Rouge Parish Sheriff's Office, 522 So.2d 1134, 1142 (La.App. 1st Cir.), writ denied, 523 So.2d 863 (La.1988).
In support of their claim that the trial court erred in finding that their petition sounded only in tort, plaintiffs rely heavily on the Louisiana Supreme Court's decision in Federal Insurance Co. v. Insurance Co. of North America, 262 La. 509, 263 So.2d 871 (1972). In that case, plaintiff Federal, as subrogee of its insured Brun Sensor Systems, Inc., brought suit against Pineville Kraft Corporation and its insurer for damages to equipment leased by Brun to Pineville. Defendants filed an exception of prescription that was maintained by the trial court based on its conclusion that the case sounded in tort, not contract. On appeal, the Louisiana Supreme Court reversed, holding that the case sounded in contract and thus was subject to ten-year and not one-year liberative prescription. In reaching this conclusion, the court stated:
It has been recognized by this Court on numerous occasions that when a party has been damaged by the conduct of another arising out of a contractual relationship, the former may have two remedies, a suit in contract, or an action in tort, and that he may elect to recover his damages in either of the two actions. In such cases, the prescription applicable is determined by the character which plaintiff gives his pleadings and the form of his action.

263 So.2d at 872 (emphasis added). The court then reviewed the factual allegations asserted in plaintiff's petition to support its conclusion that the case properly asserted an action in contract. In addition, plaintiffs in this case point to Justice Tate's concurrence in Federal Insurance, in which he averred:
In cases such as this one, a plaintiff who pleads and proves the necessary facts should be allowed to recover under any available theory, whether tort, quasi contract, or contract. To bar recovery simply by strictly construing the pleadings is to abandon the spirit of the 1960 Code of Civil Procedure [that rejected "theory of the case" pleading and adopted "fact pleading"].
Id. at 874 (Tate, J., concurring).
In response, Hibernia asserts that Federal Insurance does not control because the plaintiffs have failed to plead any facts that would support a cause of action in contract. Additionally, Hibernia, relying on Stephens v. International Paper Co., 542 So.2d 35, 38 (La.App. 2d Cir.1989), vigorously asserts that the substance of a claim is not affected by its label.
*747 Hibernia's reliance on Stephens is misplaced. The plain language of Stephens demonstrates that it applies only where "the relief requested [in plaintiff's prayer] is unsupported by factual allegations establishing plaintiff's legal entitlement to the remedy sought." Id. In this case, plaintiffs' prayer for relief was entirely consistent with the factual allegations of the petition. Stephens is thus inapposite and Federal Insurance controls resolution of this dispute. Federal Insurance clearly instructs that when a plaintiff pleads facts sufficient to support a cause of action sounding in both tort and contract, he should have the option of pursuing either theory or both. In this case, plaintiffs carefully constructed their petition to assert, inter alia, a variety of contractual claims. Although Hibernia suggests that plaintiffs have mischaracterized the facts and pled only conclusory allegations, the trial court, bound as it was to accept as true the well-pleaded allegations of plaintiffs' petition, erred in concluding that plaintiffs' petition asserted only tort causes of action. My review of the entirety of plaintiffs' petition entirety makes this point amply clear. In the end, the trial court is simply wrong in its conclusion that plaintiffs' petition was subject to one-year liberative prescription because "[t]he character of an action disclosed in the pleadings determines the prescriptive period applicable to that action." Starns v. Emmons, 538 So.2d 275, 277 (La.1989). In this case, that character was not tort alone and thus the one-year liberative prescriptive period did not apply to all of plaintiffs' claims for relief.
I recognize that a plaintiff cannot avoid problems of prescription by characterizing a cause of action sounding exclusively in tort as purely a contractual action. Trial courts do have leeway to look through the veil of the plaintiff's allegations to consider the underlying facts and character of the dispute. However, that leeway is circumscribed by the jurisprudential requirement that the trial court accept as true all well-pleaded allegations in plaintiff's petition. As the First Circuit explained in United Gas Pipe Line Co. v. Cargill, Inc., 612 So.2d 783, 786 (La. App. 1st Cir.1992), "[c]ourts are not obligated to ascribe to an action the nature or character indicated by the prayer of the plaintiff's petition when the relief requested is unsupported by factual allegations establishing plaintiff's legal entitlement to the remedy sought."
In this case, there may be legitimate disputes as to whether the Escrow Agreement incorporated the Credit Sale Agreement, whether Hibernia was obligated to act as a depositary, and various other matters. However, the existence of these disputes does not erase the simple fact that the character of plaintiffs' petition shows that some and perhaps all of their claims against Hibernia sounded in contract and thus were not subject to one-year liberative prescription. To the extent that the trial court dismissed the plaintiffs' action after concluding that the entirety of the petition was subject to one-year liberative prescription, it was in error.
For the foregoing reasons, I respectfully dissent from the majority opinion. I would reverse the trial court's dismissal of plaintiff's petition and remand the matter for further proceedings.
NOTES
[1] The only exception is found in La.R.S. 9:2941-2947 "Bond for Deed".
[1] Interestingly enough, in paragraph 19 of their petition, plaintiffs aver that these banks subsequently sued Hibernia in federal district court for breach of fiduciary duty. The outcome of these proceedings is not disclosed in the record.
[2] Parenthetically, I note that the revisions to the sales articles that became effective on January 1, 1995, amended article 2655 to provide that a dation en paiement "is a contract whereby an obligor gives a thing to the obligee, who accepts it in payment of a debt." La.C.C. art. 2655. Under the revised article, there is no specific requirement that the debt be "due" as was true with the pre-revision article. Although official revision comment (a) to article 2655 states that the revision was not intended to change the law, I fail to see either in the text of the article or in any of the official revision comments, any requirement that the debt be due.
[3] See Saul Litvinoff, The Law of Obligations, in 5 Louisiana Civil Law Treatise § 17.12, at 587 (1992) ("The legal requirement of delivery means that an executory agreement to give in payment does not amount to a dation en paiement, since in such a case the giving in payment is not effective until the executory agreement turns into an executed one, and for as long as actual delivery does not take place the original debt is not extinguished.") (citing Donoven & Daley v. Travers & Hermann. 122 La. 458, 47 So. 769 (1908)).